Michael **BANYARD,** Petitioner,

v.

William A. **DUNCAN,** Warden, Respondent.

No. CV 99–11018–JSL.

United States District Court, C.D. California.

Oct. 4, 2004.

Gregory Nicolayson, Encino, CA, for Petitioner.

Stephanie A. Miyoshi, Deputy Attorney General State of California, Los Angeles, CA, for Respondent.

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS AND VACATING SENTENCE

LETTS, District Judge.

### INTRODUCTION

Petitioner Michael Banyard was arrested for possessing a fraction of a gram of rock cocaine, which he had just purchased and which was enough only for a single use. Banyard, however, was charged under the California Three Strikes Law ("Three Strikes Law") and was determined by the sentencing court to have had two prior "serious felony" convictions (or "strikes"): one for robbery and one for assault with a deadly weapon. Cal.Penal Code §§ 1170.12, 1192.7. The cocaine possession conviction was considered to be Banyard's third strike and he was sentenced to twenty-five years to life in prison. He must serve a minimum term of twenty-five years, without credit for "good time," before even becoming eligible for parole.[1]

---

1. Although the California Court of Appeal stated that Banyard would be eligible for parole after serving 80%, or twenty years, of his "minimum term" of twenty-five years, Unpublished Opinion at 7, it appears that a defendant sentenced under the Three Strikes Law must serve the entire twenty-five year "minimum term" in prison. *See People v. Jefferson*, 21 Cal.4th 86, 96, 86 Cal.Rptr.2d 893, 980 P.2d 441 (1999) ("minimum term" is minimum time to be served in prison before parole eligibility); *see also In re Cervera*, 24 Cal.4th 1073, 1081–82, 103 Cal.Rptr.2d 762, 16 P.3d 176 (2001) (three-strike offenders cannot earn "credits" to reduce "minimum term"). Accordingly, Banyard will not be eligible for release until he has served at least twenty-five years.

Banyard's sentence is grossly disproportionate to his offense and constitutes cruel and unusual punishment, in violation of the Eighth Amendment. Moreover, there was insufficient evidence that Banyard's assault conviction constituted a strike, and he suffered ineffective assistance of counsel at the Three Strikes phase of his trial and on appeal. The California Court of Appeal's decision to the contrary involved an unreasonable application of clearly established federal law, as articulated by the Supreme Court, and Banyard's habeas petition must be granted.

## PROCEDURAL HISTORY

Banyard was sentenced in this case to twenty-five years to life in prison, following his conviction under Cal. Health & Safety Code § 11350(a) for possession of a controlled substance, a felony. According to testimony at trial, at the time of his arrest Banyard possessed rock cocaine weighing a fraction of a gram—just enough to fit beneath his fingernail. The quantity was so small that, had he not been arrested just after purchasing it, the drug would have been entirely consumed within a matter of moments.

In order to make Banyard eligible for a Three Strikes Law sentence, the criminal complaint charged him with having two prior "serious felony" convictions. Cal.Penal Code §§ 1170.12, 1192.7(c)(8), (c)(19) & (c)(23). Following his conviction on the drug possession charge, Banyard, on the advice of his counsel, admitted to having two prior serious felony convictions, but moved the sentencing court to dismiss them as "strikes" to avoid a Three Strikes Law sentence. The motion was denied. *See* Cal.Penal Code § 1385 (court may dismiss certain cases or enhancements in fur-

therance of justice); *see also People v. Superior Court (Romero)*, 13 Cal.4th 497, 529–30, 53 Cal.Rptr.2d 789, 917 P.2d 628 (1996)(discussing the scope of court's discretion to strike prior felony conviction allegations in furtherance of justice). Banyard was sentenced to twenty-five years to life in prison, which will require him to serve a minimum of twenty-five years before becoming eligible for parole.

Banyard appealed his conviction and sentence to the California Court of Appeal ("Court of Appeal"). He argued that his sentence constituted cruel and unusual punishment, that the trial court failed to advise him of the consequences of admitting to his prior strikes, and that there was insufficient evidence that his assault conviction was a strike under the Three Strikes Law. The Court of Appeal denied his petition in an unpublished opinion, filed September 9, 1998.

Banyard challenged his conviction and sentence in a federal habeas petition, initially filed October 21, 1999. Banyard has now filed a second amended habeas petition, in which he claims that his sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment, that there is insufficient evidence that his assault conviction was a serious felony within the meaning of the Three Strikes Law, that his trial counsel was ineffective, and that his appellate counsel was ineffective for failing to argue that his trial counsel was ineffective. These claims have been exhausted in the state courts and are now properly before the Court.[2]

On May 24, 2002, on its own motion, the Court appointed counsel to represent Banyard in further proceedings. At a status conference held July 9, 2002, the Court

---

2. Substantial litigation has taken place in both state and federal court regarding Banyard's habeas claims. The complete procedural history of these habeas claims is set forth more fully in the Magistrate Judge's Report and Recommendation, filed September 10, 2001.

ordered additional briefing on Banyard's second claim that his assault conviction was not a serious felony. On April 3, 2003, the Court ordered further briefing on Banyard's gross disproportionality claim in light of the Supreme Court's decisions in *Ewing v. California*, 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003), and *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). On May 30, 2003, the Court vacated its reference to the Magistrate Judge and retained the case for further proceedings. On July 1, 2003, a further status conference was held. The issues set forth in Banyard's second amended habeas petition have been fully briefed by the parties and are ripe for decision.

## STANDARD OF REVIEW

Banyard's habeas petition is subject to the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *Lindh v. Murphy*, 521 U.S. 320, 335, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Accordingly, he is entitled to federal habeas relief only if the state court's adjudication of the merits of his habeas petition "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[3] 28 U.S.C. § 2254(d)(1)-(d)(2). A state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing Supreme Court law or if it "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405–406,

120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court unreasonably applies clearly established federal law if it identifies the correct governing legal principle from Supreme Court decisions but applies it unreasonably to the facts of a particular case. *Id.* at 407–408, 120 S.Ct. 1495. A state habeas petitioner must show that the state court's application of clearly established federal law was objectively unreasonable. *Andrade*, 538 U.S. at 75, 123 S.Ct. 1166.

## DISCUSSION

Banyard makes four claims for relief in his petition: (1) his sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment; (2) there is insufficient evidence that his assault conviction was a serious felony within the meaning of the Three Strikes Law; (3) his trial counsel was ineffective for (a) failing to investigate whether his assault conviction was a serious felony, (b) advising him to admit that his assault conviction was a serious felony, and (c) failing to bring before the jury his co-defendant's written confession; and (4) his appellate counsel was ineffective for failing to argue that his trial counsel was ineffective.

## I. Claim One: Banyard's Sentence Constitutes Cruel and Unusual Punishment In Violation of the Eighth Amendment

### A. Applicable Supreme Court Law

■ According to the Supreme Court's later decision in *Andrade*, at the time Banyard's direct appeal was decided, it was clearly established that a sentence that is

---

**3.** The court "looks through" the California Supreme Court's denial of review without comment to the "last reasoned decision from the state court system." *Gill v. Ayers*, 342 F.3d 911, 917 (9th Cir.2003). The last reasoned decision from the state court system was the September 9, 1998, unpublished

opinion of the Court of Appeal. The February 1, 2000, minute order of the Los Angeles County Superior Court on Banyard's initial state habeas petition merely reiterates and ratifies the findings and conclusions of the September 9, 1998, decision of the Court of Appeals.

"grossly disproportionate" to the crime committed violates the Eighth Amendment prohibition against "cruel and unusual punishment." *See Andrade,* 538 U.S. at 72, 123 S.Ct. 1166. It was also clearly established that state legislative policies directed to the problem of criminal recidivism are an important factor and are entitled to great deference in weighing the "gravity of the offense" for which an enhanced sentence is given under state repeat offender laws. *See Rummel v. Estelle,* 445 U.S. 263, 276, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980); *see also Solem v. Helm,* 463 U.S. 277, 290, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). In addition, it was clearly established that the deference to be paid to state recidivism policies in Eighth Amendment cases is not unlimited and that, in certain "exceedingly rare" and "extreme case[s]," sentences validly imposed under state statutes reflecting the state's policy regarding recidivism may still violate the Eighth Amendment. *See Solem,* 463 U.S. at 290, 103 S.Ct. 3001; *see also Andrade,* 538 U.S. at 73, 123 S.Ct. 1166 (quoting *Harmelin v. Michigan,* 501 U.S. 957, 998, 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring)).

The Supreme Court has recognized that, although the applicable Eighth Amendment legal standard of "gross disproportionality" was clearly established, the "precise contours" of the line between the degree of disproportionality that could exist between the gravity of the offense and the severity of the punishment without being unconstitutional, and the degree of disproportionality that would be sufficiently "gross" to be unconstitutional under the Eighth Amendment, are unclear and would require case-by-case analyses and comparisons of specific cases. Even before the decisions in *Andrade* and *Ewing,* however, the differing results in *Rummel* and *Solem* showed that whatever the difficulties of defining the precise contours of the gross disproportionality principle, the line separating the constitutional from the unconstitutional lay somewhere between the two cases.

Through its decisions in *Andrade* and *Ewing,* the Supreme Court confirmed that the opposing results of *Rummel* and *Solem* were both good law, and further delineated the extent to which federal courts must defer and give weight to state recidivism policies in considering the "gravity of the offense" for which the challenged punishments in specific cases are alleged to be grossly disproportionate. By affirming *Solem,* the Supreme Court again made clear that the deference and weight necessarily given to state recidivism policies is not absolute, and that sentences validly imposed under state repeat offender laws may be invalid under the Eighth Amendment.

Taken together with *Rummel* and *Solem, Andrade* and *Ewing* provide a substantial legal and factual framework within which federal courts can analyze the specifics of the cases before them to determine whether valid state sentences imposed under statutes reflecting state recidivism policies are prohibited by the Eighth Amendment. *Rummel, Solem, Andrade,* and *Ewing* all involved Eighth Amendment challenges in which the sentences for relatively minor offenses were substantially enhanced pursuant to state repeat offender laws. They also involved enhanced sentences that mandated a minimum term of imprisonment by reason of the defendant's repeat offender status that was higher than the maximum prison term that could have been imposed for the same crime as a first offense. In all four cases, the Supreme Court held that the "gross disproportionality" standard was the applicable legal standard. It also held that the "gravity of the offense" for which the enhanced sentence was imposed must be assessed under the Eighth Amend-

ment, not only by reference to the nature and severity of the triggering offense, but also by reference to the state's recidivism policy, as expressed in the state's repeat offender statutes, and to the totality of the offender's criminal history.

These four Supreme Court cases are clustered factually within the narrow area in which the line of demarcation lies between valid sentences that include enhancements under state repeat offender laws, and the "extremely rare" and "extreme" sentences that do violate the Eighth Amendment. It is not surprising, therefore, that the various opinions in those cases have noted that the cases are difficult to distinguish and have differed sharply about the side on which each case falls. Albeit with substantial difference of opinion, *Rummel*, *Andrade* and *Ewing* all uphold the challenged sentence. By doing so, the holdings of these cases strongly emphasize the principle that enhanced sentences under state repeat offender laws that produce disproportionality no more severe than that in those cases may not be held to violate the Eighth Amendment

*Solem* is the only case in which the Supreme Court has held a non-capital sentence enhanced by a state repeat offender law to be invalid under the Eighth Amendment. *Andrade* and *Ewing* show that many of the Justices find *Solem* to be very nearly indistinguishable from the other cases. Nevertheless, the Supreme Court has held that the distinction was properly drawn, and *Solem* remains valid law. By affirming the holding in *Solem*, therefore, *Andrade* and *Ewing* confirm that the line of demarcation between sentences enhanced under repeat offender laws that are valid under the Eighth Amendment and those that are invalid falls between *Rummel* and *Solem*.

■ A comparison of the totality of factors relating to the gravity of the offense in this case with those relating to the gravity of the offenses in *Rummel*, *Andrade*, *Ewing*, and *Solem* demonstrates that the sentence in this case, which was enhanced to a sentence of twenty-five years to life imprisonment for possession of a single use quantity of rock cocaine, is even more disproportionate than the sentences in any of the relevant Supreme Court cases. This case, therefore, is an a "exceedingly rare" one, in which the sentence is grossly disproportionate to the crime and violates the Eighth Amendment.

### 1. *Solem v. Helm*

In *Solem*, the Supreme Court held that a sentence of life in prison without the possibility of parole for a seven-time felon violated the Eighth Amendment. *Solem*, 463 U.S. at 303, 103 S.Ct. 3001. Helm's seventh felony was for uttering a "no account" check in the amount of $100, which by itself would have been punishable by up to five years in state prison. Helm's extensive criminal history spanned eleven years and included the following: three convictions of third-degree burglary, each punishable by up to fifteen years in state prison; one conviction of obtaining money under false pretenses, punishable by up to three years in state prison or one year in county jail; one conviction of grand larceny, punishable by up to ten years in state prison or one year in county jail; and one conviction of a third offense of driving while intoxicated. *Id.* at 279–80, 103 S.Ct. 3001. The Supreme Court did not note Helm's time served for any of these convictions. Helm was charged and convicted under South Dakota's repeat offender law and received the maximum sentence of life in prison without the possibility of parole, for which he was eligible after having three prior convictions "in addition to the principal felony." *Id.* at 281–82, 103 S.Ct. 3001.

The Supreme Court held the sentence to be grossly disproportionate to Helm's

crime. *See id.* at 284, 303, 103 S.Ct. 3001. Recognizing both the "exceedingly rare" nature of its holding, citing *Rummel,* 445 U.S. at 272, 100 S.Ct. 1133, and the "broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes," the Supreme Court stated that the "proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (I) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Solem,* 463 U.S. at 290–292, 103 S.Ct. 3001. The Supreme Court also noted that "[t]here are other accepted principles that courts may apply in measuring the harm caused or threatened to the victim or society," such as the "absolute magnitude of the crime" and the offender's "culpability." *Id.* at 293, 103 S.Ct. 3001.

### 2. *Rummel v. Estelle*

In *Rummel,* the Supreme Court held that a sentence under the Texas repeat offender law to a minimum sentence of life in prison with the possibility of parole in twelve years was not unconstitutional. *Rummel,* 445 U.S. at 265–268, 100 S.Ct. 1133. Rummel's first felony conviction was for fraudulent use of a credit card to obtain $80 worth of goods, punishable by a minimum of two years and a maximum often years in prison, for which he pleaded guilty and was sentenced to three years. Rummel's second felony conviction was for passing a forged check in the amount of $28.36, punishable by a minimum of two years and a maximum of five years in prison, for which he pleaded guilty and was sentenced to four years. Rummel's third felony conviction was for obtaining $120.75 by false pretenses, which by itself was punishable by a minimum of two years and a maximum often years. Rummel,

however, was charged and convicted under Texas's repeat offender law, which required a mandatory sentence of life in prison, with the possibility of parole, upon conviction of a third felony. *Id.* at 265–66, 100 S.Ct. 1133. Under Texas law, the minimum sentence Rummel actually would have to serve was twelve years before he would become eligible for parole. *Id.* at 268, 100 S.Ct. 1133. In upholding Rummel's sentence, the Supreme Court held that the state of Texas "was entitled to place upon Rummel the onus of one who is simply unable to bring his conduct within the social norms prescribed by the criminal law of the state." *Id.* at 284, 100 S.Ct. 1133.

### 3. *Lockyer v. Andrade* and *Ewing v. California*

In the companion cases *Andrade* and *Ewing,* the Supreme Court affirmed California Three Strikes Law sentences for two "career criminals" with lengthy criminal histories and triggering offenses that repeated their past crimes.

In *Andrade,* the defendant was convicted of two felony counts of petty theft with a prior conviction and sentenced to two consecutive terms of twenty-five years to life under the California Three Strikes Law. Andrade's criminal history included: multiple counts of burglary, for which he was sentenced to 120 months in prison; misdemeanor theft, for which he was sentenced to six days jail with 12 months' probation; transportation of marijuana, for which he was sentenced to eight years in federal prison; misdemeanor theft, for which he was sentenced to 180 days in jail; and transportation of marijuana, for which he was sentenced to 2,191 days in federal prison. He also was arrested for a state parole violation arising from his escape from federal prison.

*Andrade* was a federal habeas proceeding, in which the Supreme Court held,

*inter alia,* that because the "'precise contours'" of the gross disproportionality principle "'are unclear,'" the state court did not make an objectively unreasonable application of clearly established federal law in concluding that the defendant's criminal history and offenses were more similar to *Rummel* than to *Solem. Andrade,* 538 U.S. at 68–70, 76, 123 S.Ct. 1166 (citations omitted).[4]

*Ewing* was a direct appeal, in which the Supreme Court affirmed the state court's upholding of Ewing's sentence of twenty-five years to life in prison. *Ewing,* 538 U.S. at 29–30, 123 S.Ct. 1179. The triggering offense for Three Strikes Law purposes was grand theft of $1,200 of merchandise and was the defendant's fifteenth conviction, for which he had previously served nine separate terms of incarceration. *Id.* at 18, 123 S.Ct. 1179. Ewing's extensive criminal history also indicated a pattern of increasing violence over the course of nearly ten years. *Id.* While noting that Ewing's triggering offense of grand theft "was certainly not 'one of the most passive felonies a person could commit,'" *Id.* at 28, 123 S.Ct. 1179 (quoting *Solem,* 463 U.S. at 296, 103 S.Ct. 3001), the plurality held:

> In weighing the gravity of Ewing's offense, we must place on the scales not only his current felony, but also his long history of felony recidivism. Any other approach would fail to accord proper deference to the policy judgments that find expression in the legislature's choice of sanctions.

After considering Ewing's triggering offense, along with his long and violent crim-

inal history, the Supreme Court ruled that Ewing's sentence did not raise an inference of gross disproportionality. *Id.* at 30.

## B. Banyard's Sentence of Twenty–Five Years to Life In Prison Is Grossly Disproportionate to the Crime Committed, In Violation of the Eighth Amendment.

Under *Ewing,* in determining whether a sentence is grossly disproportionate in violation of the Eighth Amendment, the Court is first to "address the gravity of the offense compared to the harshness of the penalty." *Ewing,* 538 U.S. at 28, 123 S.Ct. 1179. "In weighing the gravity of [the defendant's] current offense," the Court "must place on the scales not only his current felony," but also his criminal history. *Id.* at 29, 123 S.Ct. 1179. If a threshold comparison of the gravity of the offender's crimes with the harshness of the penalty gives rise to an inference of gross disproportionality, the Court may then analyze some or all of the "objective criteria" set forth in *Solem* to guide the disproportionality determination. The Court has followed this mode of analysis in reaching its ultimate conclusion in this case.

### 1. A Threshold Comparison of the Gravity of the Crime Committed and the Sentence Imposed Leads to an Inference of Gross Disproportionality.

### a. The Harshness of Banyard's Sentence

It is beyond reasonable debate that Banyard's sentence of at least twenty-five years, with the possibility of life imprison-

---

4. The state court, in affirming Andrade's sentence, had held that because Andrade retained the possibility of parole like the defendant in *Rummel,* but unlike the defendant in *Solem,* his sentence was not grossly disproportionate. The Supreme Court affirmed the sentence, finding, *inter alia,* that the state court of appeal's reliance on *Rummel* was not "objectively unreasonable," but it did not adopt the state court's reasoning. *Andrade,* 538 U.S. at 76, 123 S.Ct. 1166.

ment, is extremely harsh when measured against the triggering (or "current") offense of possessing a single use quantity of drugs. The *maximum* statutory penalty for simple drug possession is only five years in prison. The *minimum* sentence resulting from the application of the Three Strikes Law is twenty-five years, with no possibility of reduction for good behavior or working while in prison. *See In re Cervera,* 24 Cal.4th at 1080–82, 103 Cal. Rptr.2d 762, 16 P.3d 176. "Indeed, it appears there are only two more severe sentences available to anyone convicted of a crime in California: life without the possibility of parole and death." *Ramirez,* 365 F.3d at 767. As set forth more fully below in the intrajurisdictional analysis, California punishes far more serious and violent crimes much less severely than the sentence imposed upon Banyard. Banyard's minimum time in prison of twenty-five years is more than twice that of the defendant in *Rummel,* who was eligible for parole after twelve years. Given the severity of Banyard's sentence, the Court now turns to the question of whether this extreme sentence is justified by the gravity of his triggering offense and criminal history.

#### b. The Gravity of Banyard's Current Offense

The approach required by *Ewing* to determine the gravity of the triggering ["current"] offense has two components, whereby the Court must not only assess the seriousness of that offense, as it would in the case of a first offender, but also must assess the offender's criminal history. Having made these assessments, the Court must then place them on the scales together, to be weighed against the harshness of the penalty, to determine whether the sentence is "grossly disproportionate."

The importance of assessing the triggering offense cannot be ignored or minimized. The triggering offense provides the sole justification for the offender to be punished at all. To use a minor triggering offense simply to increase the punishment for prior offenses retroactively would violate fundamental principles of due process and double jeopardy. *Cf., Andrade,* 538 U.S. at 81, 123 S.Ct. 1166 (Souter, J., dissenting). Therefore, if prior crimes are to be used as the justification for punishing minor triggering offenses at levels reserved for the most serious offenses, the legal rationale must further some other penological objective beyond the mere desire to increase the sentences previously imposed or to incapacitate the person for the future because the previous sentences have not done so.

It appears that California is one of only three states where a felony that differs in kind from the crimes in the offender's prior history and that is not sufficiently serious to qualify as a first strike can still be a third strike and trigger a sentence of twenty-five years to life in prison. This was not an issue in *Andrade* or *Ewing,* both of which were like *Rummel* and *Solem* in that the triggering offense and most, if not all, of the prior strikes involved the theft or misappropriation of money. The triggering offense in those cases represented the continuation of a specific pattern of criminal behavior for which the offender had been previously punished at least two times before.

Here, there is no relation of kind or nature tying the criminal act involved in Banyard's triggering offense to the criminal acts that accounted for his first two strikes or that could constitute the continuation of a specific pattern of criminal behavior for which Banyard had been previously punished. For this reason, the weight to be assigned to Banyard's triggering offense must be considered separately, rather than simply lumped in as part of the weight of his overall criminal record.

Banyard's mere possession of a single use quantity of an illegal drug does not constitute a legitimate basis for imposing a term of twenty-five years to life in prison [5] by reason of his past criminal acts. While the Court has no desire to trivialize or disparage any drug laws, it does believe that the crime of drug possession occupies a unique place among the nation's criminal laws. The crime of possessing a use quantity of drugs is committed on a regular basis by countless otherwise law-abiding citizens, without any significant feeling of moral culpability. Only those who are actually observed purchasing the drugs or who may be searched for some other reason need have any significant fear of apprehension or punishment.

More so even than the triggering offense in *Solem*, Banyard's triggering offense was "one of the most passive crimes a person can commit." *Solem*, 463 U.S. at 296, 103 S.Ct. 3001. It involved no other person and produced no criminal victim. The crime commenced only when Banyard reduced the drug to possession. It would have ended without incident and left no basis for prosecution had law enforcement not intervened in the moments before Banyard planned to ingest the drug. The Court believes that, regardless of the nature and extent of Banyard's prior criminal history, it is cruel and unusual punishment that contravenes the Eighth Amendment to sentence him to twenty-five years to life in prison for this offense.

### c. Banyard's Prior Strikes

Banyard's two prior strikes also require separate discussion from the remainder of his criminal history. Like his triggering offense of drug possession, Banyard's prior strikes have no connection with each other and are not part of any other pattern of criminal conduct. On the contrary, both prior strikes resulted from Banyard's "spur of the moment" responses in confrontational circumstances in which it does not appear that he was the instigator. These crimes were part of no ascertainable criminal pattern and were far outside the "heartland" of the categories of cases constituting the "serious felonies" that can be used as prior strikes under the Three Strikes Law. Indeed, as set forth more fully below, what was deemed to be Banyard's second strike was not even a "serious felony," as is required for a valid prior strike.

### i. Banyard's Robbery Conviction

Banyard's first "serious felony" conviction was in 1988 for robbery. According to the information before the Court, the *res gestae* of the incident began with a collision between a vehicle driven by Banyard and another vehicle. The only information before the Court as to which driver may have been at fault arises by inference from Banyard's subsequent conduct. After learning that the other driver was uninsured, Banyard took six dollars from him and drove away. (Petitioner's Second Supplemental Brief in Support of Second Amended Petition for Writ of Habeas Corpus at 9:27–28.) Banyard was later arrested, charged with robbery and pleaded guilty. The record does not reflect that Banyard used any force to obtain the money and he was not charged with any enhancements. Although Barnyard's actions

---

**5.** The views expressed by the Court in this case do not reflect agreement with critics who favor legalization of the sale, purchase and use of drugs. The Court's statements, however, do reflect its view that the proper balance has not been drawn between the resources devoted to addressing the nation's drug problem by attempting to apprehend and incarcerate suppliers of drugs as opposed to the resources devoted to decreasing drug demand by means other than the largely idle threat of incarceration.

technically amounted to "robbery," the conduct involved would more accurately be described as "confrontation petty theft and not really robbery." *Ramirez v. Castro*, 365 F.3d 755, 768 (9th Cir.2004) (internal quotations omitted). In any event, the actual circumstances of the crime were outside the heartland of the "serious felonies" that normally constitute prior strikes under the Three Strikes Law.

### ii. Banyard's Assault Conviction

Banyard's second strike was his 1992 assault conviction, which arose from a domestic dispute and is the only arguably violent behavior in his record.[6] Banyard initially was charged in a felony complaint with a violation of Cal.Penal Code § 245(a)(1), assault with force likely to produce great bodily injury, with an enhancement under Cal.Penal Code § 12022.7 for inflicting great bodily injury and an enhancement under Cal.Penal Code §§ 1203.06(a)(1) and 12022.5(a) for personally using a firearm. Banyard also was charged with a violation of Cal.Penal Code § 667(a) for having been convicted previously of a serious felony. This charge referred to Banyard's 1998 robbery conviction.

A preliminary hearing was held on August 3, 1992. According to the testimony of Banyard's former girlfriend, Wakesha Rivers, which was never admitted to by Banyard or otherwise corroborated, Rivers invited Banyard over to her apartment to watch television, drink and smoke. Banyard, whose leg was injured, put down his crutches and sat in a bean-bag chair facing the television. Rivers sat between his legs, also facing the television. She became angry when Banyard insulted her friend and struck him in the chest. Banyard struck her back. A struggle followed and Rivers was knocked to the ground several times. Rivers alleged that the altercation concluded when Banyard struck her on the head with a firearm. Rivers testified that she was briefly unconscious and received three stitches in her forehead. Following the preliminary hearing, Count 1 was changed from a charge under Cal.Penal Code § 241(a)(1),[7] assault with a deadly weapon or assault with force likely to produce great bodily injury, to a charge under Cal.Penal Code § 241(a)(2),[8] assault with a firearm. In spite of Rivers' testimony concerning her injuries, the great bodily injury enhancement under § 12022.7 charged in the complaint was stricken for insufficiency of the evidence.

Rivers' testimony at the preliminary hearing was not subjected to cross-examination and Banyard consistently has denied her allegations, including that a firearm was present. On its face, Rivers'

---

6. Although the Information in Banyard's assault case, in which he was charged under Cal.Penal Code § 667(a) with an enhancement for having a prior felony conviction, indicates that Banyard's robbery conviction under Cal.Penal Code § 211 included an enhancement under Cal.Penal Code § 12022(b) for use of a deadly or dangerous weapon, this is simply erroneous. (Supplemental Return Ex. C.) Banyard's official criminal history, or "rap sheet," filed with the Court in this habeas case on August 30, 2002, and the Probation Officer's Report, filed February 10, 1997, in connection with the instant offense, show that Banyard was convicted only of § 211, with no § 12022(b) enhancement.

7. California Penal Code § 245(a)(1) provides:

   Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury shall be punished by imprisonment in the state prison . . . .

8. California Penal Code § 245(a)(2) provides:

   Any person who commits an assault upon the person of another with a firearm shall be punished by imprisonment in the state prison . . . .

testimony raises serious questions of credibility and suggests the possibility of a complete defense. Her testimony suggests clearly, for example, that she was the aggressor from the beginning to the end of the altercation. It provides no explanation of how the struggle could have ended as it did, when it began with Banyard seated in a bean bag chair with his crutches on the floor beside him, and Rivers seated in his lap. Given that the testimony was given at a preliminary hearing, no other witnesses were ever called who might have raised doubts about the truth of this testimony. Even if the proof at trial had shown this testimony to be true, it is unclear whether the evidence also would have shown that Banyard did no more than was reasonably necessary to defend himself by putting an end to the attacks on him.

It is unnecessary to address these questions further. They are raised simply as a possible explanation for why the plea bargain for an apparently serious offense, in a case with highly confused proceedings in which Banyard never admitted to any of the facts necessary to make the offense qualify as a strike under the Three Strikes Law, resulted in a plea of no contest and a sentence of time served and thirty-six months probation.

The document recording Banyard's plea shows him pleading no contest, rather than guilty, to "245a" and shows that the enhancement under § 12022.5 for personally using a firearm was stricken. (Reply Memorandum to Petitioner's Motion for Leave to File Second Amended Petition ("Reply") Ex. B–3.) Although the document does not indicate on its face whether the plea was to § 245(a)(1), assault with a deadly weapon *or* assault with intent to cause great bodily injury, or § 245(a)(2), assault with a firearm, the transcript of the plea hearing makes clear that Banyard did, in fact, plead guilty to § 245(a)(1).[9]

The state court in the assault case erred seriously, therefore, in issuing its judgment on November 3, 1992, wherein it indicated that Banyard pled no contest to § 245(a)(2), not § 245(a)(1). This error was the predicate for the state court's conclusion in the drug possession case that Banyard had been convicted under § 245(a)(2), and ultimately led to his sentence of twenty-five years to life in prison.

In order for Banyard's assault conviction to constitute a strike for purposes of the Three Strikes Law, it must have been proven that Banyard actually inflicted great bodily injury or used a firearm or a dangerous or deadly weapon in the commission of the assault. Cal.Penal Code §§ 1192.7(c)(8) or (c)(23). A simple review of the transcript of Banyard's plea shows that he actually pled no contest to § 245(a)(1), assault with a deadly weapon *or* assault with force likely to produce great bodily injury. (Reply Ex. B). Banyard never admitted to having used a firearm or a dangerous or deadly weapon, nor did he admit to having actually inflicted great bodily injury. In fact, enhancements for having caused great bodily injury and for use of a firearm were stricken by the court. In these circumstances, the "least adjudicated elements" of the offense to

---

**9.** The plea colloquy makes clear that Banyard pled guilty to § 245(a)(1):

> The Court: Mr. Banyard, I understand you are here to plead guilty to a violation of Section 245, assault with a deadly weapon or assault with force likely to produce great bodily injury. The plea agreement is credit for time served as of today, summary probation as long as you are on active parole, and the use of a firearm enhancement is to be stricken. Is that the plea agreement as you know it?
>
> Defendant: Yes, sir.

(Reply Ex. B–1.) Banyard went on to plead "no contest" to "the charges" and was sentenced to credit for time served and summary probation for thirty-six months. (Reply Ex. B–3.)

which he actually pled no contest are that he committed assault with force likely to produce great bodily injury. This is not a serious felony under the Three Strikes Law. *See People v. Rodriguez,* 17 Cal.4th 253, 261, 70 Cal.Rptr.2d 334, 949 P.2d 31 (1998)("[T]he least adjudicated elements of the crime defined in section 245(a)(1) are insufficient to establish a 'serious' felony.")

Even if the Court assumed Rivers' version of events in Banyard's assault case to be true, the balance of the gross disproportionality equation does not change. Although any amount of violence, no matter how minimal, should be viewed seriously, the circumstances underlying Banyard's assault conviction show that it was outside the heartland of what would normally constitute assault. The minor nature of Banyard's crime is further reflected in the sentence of thirty-six months probation offered by prosecutors in exchange for Banyard's plea of no contest to the assault charge. A sentence of probation is not consistent with a desire to punish Banyard's crime as a serious felony.

### d. Banyard's Other Criminal History

The California Court of Appeal, in reviewing Banyard's criminal history, made no attempt to ascertain the true nature of his prior offenses. Rather, the Court of Appeal simply summarized what the "rap sheet" included in the appellate record showed about Banyard's convictions and concluded that he was a "recidivist" with a "history of repeated criminal behavior and repeated failure to reform ...." Unpublished Opinion at 5.

■ *Solem* clearly established, however, that a determination of whether a sentence is grossly disproportionate necessitates analysis of the defendant's criminal history, including the underlying circumstances of the defendant's prior convictions. *Solem,* 463 U.S. at 290–291, 103 S.Ct. 3001. Under *Solem,* a gross disproportionality

analysis will include looking into the facts of an underlying conviction in judging the gravity of that offense, including the "petitioner's conduct," the "absolute magnitude of the crime," the criminal intent involved, and the defendant's motive. *Id.* at 292–294, 103 S.Ct. 3001. The Supreme Court stated that "[a]pplication of [the 'objective criteria'] assumes that courts are competent to judge the gravity of an offense, at least on a relative scale .... Comparisons can be made in light of the harm caused or threatened to the victim or society, and the culpability of the offender." *Solem,* 463 U.S. at 292, 103 S.Ct. 3001.

As this case aptly demonstrates, the Supreme Court's mandate to assign weights to repeat offenders' entire criminal histories in Eighth Amendment cases presents an extremely difficult, if not impossible, task. Sentencing courts have always considered criminal histories as a factor in determining the sentences for crimes committed by repeat offenders. The Supreme Court's mandate to make such assessments for the purpose of determining whether a mandatory sentence for a minor offense that is five or more times greater than the statutory maximum for the offense can be justified by the offender's prior criminal history poses an entirely different problem. Criminal history is only one of the multiplicity of factors considered in determining ordinary criminal sentences. The weight given to this factor necessarily varies with the amount and reliability of the information about the prior crimes, the number and nature of other factors to be considered, and the statutory maximum for the offense. The balance among these factors is arrived at in the exercise of discretion, and no matter how many there are or how they are weighed, the sentence is limited by the statutory maximum penalty. As long as the weights to be accorded to specific crimes are not statutorily assigned and cumulated, the

sentencing court is able to consider the amount and reliability of the information available about the crimes constituting the criminal history so as to avoid giving the criminal history undue weight.[10]

The Court has been unable to ascertain precisely what information about Banyard's criminal history was presented to the California Court of Appeal. It appears, however, that the only information that was part of the record at that time was the "Adult [Criminal] History" report provided by the probation office ("Probation Office Report"), which is part of the state court case file. In addition to the 1988 robbery and 1991 assault convictions, the Probation Office Report shows only a 1991 misdemeanor conviction for "disorderly conduct/alcohol," for which Banyard was sentenced to probation, a 1995 felony conviction for drug possession, and a 1991 violation of the terms of parole imposed in connection with his previous 1991 probationary sentence.

The Court has also reviewed a document supplied by Respondent Ernest C. Roe, Warden of Centinela State Prison, which appears and is represented to be a copy of Banyard's "rap sheet." Although the rap sheet is four pages long and appears to contain entries relating to at least fourteen separate incidents, only one conviction, for misdemeanor petty theft, is shown on the rap sheet and omitted from the Probation Office Report. The remainder of Banyard's rap sheet indicates that there were at least six times that he was arrested and not prosecuted. The explanations include "lack of probable cause" (twice), "inadmissible search and seizure" and "det[ained] only/further investigation." It appears

that these cases were not referred for prosecution. In at least one case, prosecution was rejected and the other cases have no explanation for why the charges were not pursued.

During the course of the ten-year span in which Banyard accumulated the criminal record shown by his rap sheet, he was arrested more often for crimes that were never prosecuted than for crimes that resulted in convictions. Each time Banyard was arrested, he was taken off the streets and given strong encouragement not to return. As a basis for a sentence of twenty-five years to possible life in prison, however, these arrests are entitled to little or no weight.

Banyard's misdemeanor convictions pursuant to guilty pleas must be considered in the same light, given what is known about his prior strike convictions. The plea bargains accepted by Banyard resulted in probationary sentences. Even assuming that plea bargained probationary sentences in these cases did not reflect any problems with the government's proof, as it appears to have in Banyard's prior strike cases, it seems likely that Banyard's apprehension and indictment for these offenses had as much to do with law enforcement efforts to "clear the streets" as it did with any belief that, because of his criminal history, Banyard should be considered a serious threat to society and given a correspondingly severe, deterrent sentence.

The Court notes a pattern in Banyard's criminal history that it has observed before. At least in the kinds of neighborhoods in congested urban areas in which

---

**10.** Federal sentencing courts are bound by the United States Sentencing Guidelines, which provide for an offender to be placed in a Criminal History Category, based upon varying "points" that are assigned for prior crimes. Notwithstanding that the probation office investigates each crime, reviews arrest reports and other available law enforcement records, and provides an opportunity to the offender to explain the circumstances in which the crime was committed, overstatement of criminal history is among the reasons most often given for Guideline departures. See text below.

Banyard resided, the pattern raises serious questions about widely held assumptions that criminal defendants are always guilty of the crimes with which they are charged and that the only reason they are given a sentencing break through plea bargaining is to save the system the trouble and expense of jury trials. Banyard is a black man who, according to police records and the evidence at trial, was a known gang member who resided throughout his adult life in the kind of neighborhood that police often describe as "drug and ganginfested, high crime neighborhoods." These are the areas in which, for the protection of law-abiding residents of the area, police and other law enforcement agencies tend to concentrate their efforts. The objective of "clearing the streets" and "making them safe for law-abiding citizens" is given top priority. If it is true, as it often appears to have been in this case, that law enforcement officers in pursuit of this legitimate priority tend to err on the side of suspecting and arresting persons simply for being in the wrong place at the wrong time, their actions may be understandable, but the resulting arrest record can be given no weight in assessing Banyard's criminal history.

The Court's review of the state court records in this case have illustrated the difficulty facing courts who have been charged with determining the gravity of a defendant's past convictions for purposes of conducting a gross disproportionality analysis. In this case, the Court has spent innumerable hours attempting to judge the gravity of Banyard's assault conviction under Cal.Penal Code § 245(a), but inconsistencies in the record have required the Court to conduct a very detailed review of the record in order to determine the underlying facts of that conviction and even the exact charge to which Banyard actually was convicted.[11] Moreover, the state court records provide none of the underlying facts of Banyard's other non-strike convictions.

The Supreme Court's assumption "that courts are competent to judge the gravity of an offense, at least on a relative scale," *Solem*, 463 U.S. at 292, 103 S.Ct. 3001, is misplaced here, where the records are incomplete and unreliable and where the Court of Appeal did not even undertake such comparisons. It was objectively unreasonable for the Court of Appeal to fail to analyze the underlying facts of Banyard's convictions, and to fail to recognize the lack of such facts as to some of the convictions, in conducting the gross disproportionality analysis.

### e. Possibility of Parole

■ Respondent has argued in its papers that the distinguishing feature between *Solem*, in which the state sentence was held invalid, and the other Supreme Court cases, in which the sentences were upheld, was that the defendant in *Solem* was sentenced to life in prison without possibility of parole, while all of the other defendants, like Banyard, retained the possibility of parole. Citing to *Andrade*, Respondent reasons that because Banyard might be paroled, the California Court of Appeal could not have been objectively unreasonable in determining that his sentence was constitutional.

11. As set forth more fully herein, Banyard claims that he was, in fact, convicted of assault under Cal.Penal Code § 245(a)(1) (assault with a deadly weapon or assault with force likely to produce great bodily injury), rather than Cal.Penal Code § 245(a)(2) (assault with a firearm) and that, therefore, this conviction cannot constitute a valid strike. Based on a review of the records of that case, the Court has determined that Banyard was convicted of § 245(a)(1), assault with force likely to produce great bodily injury, which is not a "serious felony," and therefore not a strike, under the Three Strikes Law.

Respondent's argument is without merit. In *Andrade,* the Supreme Court held only that parole eligibility was a relevant consideration in assessing the harshness of a prison term. *Andrade,* 538 U.S. at 73–74, 123 S.Ct. 1166. *Andrade* does not announce a rule that the possibility of parole dictates the conclusion that any life sentence with the possibility of parole is constitutional regardless of the circumstances. Rather, the Supreme Court has stated that "no penalty is *per se* constitutional .... [A] single day in prison may be unconstitutional in some circumstances." *Solem,* 463 U.S. at 290, 103 S.Ct. 3001 (citations omitted). Accordingly, Respondent's argument that *Andrade* necessarily precludes relief because Banyard is eligible for parole after serving twenty-five years is meritless.[12]

### f. The Totality of Banyard's Criminal History Does Not Justify This Sentence.

Given the circumstances underlying Banyard's predicate "serious felony" convictions and the limited frequency and severity of his offenses, Banyard's criminal history is far less serious than those at issue in *Andrade, Ewing,* and even *Solem.* Neither the "harm caused or threatened to the victim or society," nor the "absolute magnitude" of Banyard's prior convictions justifies Banyard's sentence of twenty-five years to life in prison. *Solem,* 463 U.S. at 293, 103 S.Ct. 3001. Unlike *Andrade,* which was held to lie on the "imprecise contours" of the gross disproportionality spectrum, Banyard's sentence is far more egregious than that imposed in *Solem* and

is grossly disproportionate. This is one of the "rare case[s] in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Harmelin,* 501 U.S. at 1005, 111 S.Ct. 2680 (Kennedy, J., concurring).

### 2. Banyard's Sentence Is Grossly Disproportionate When Compared With Sentences Imposed In This and Other Jurisdictions.

Although it is not clear whether a court must undertake intrajurisdictional and interjurisdictional analyses following *Ewing,*[13] the Court has compared Banyard's sentence to those imposed within California and in other states. These comparisons further support the Court's finding of gross disproportionality.

### a. Intrajurisdictional Analysis

An intrajurisdictional analysis compels the Court to "compare the sentences imposed on other criminals in the same jurisdiction. If more serious crimes are subject to the same penalty, or to less serious penalties, that is some indication that the punishment at issue may be excessive." *Solem,* 463 U.S. at 291, 103 S.Ct. 3001.

California punishes far more serious and violent crimes much less severely than the sentence imposed upon Banyard. *See, e.g.,* Cal.Penal Code § 190 (second-degree murder punishable by fifteen years to life in prison); § 193 (voluntary manslaughter punishable by up to eleven years); § 264

---

12. Significantly, in this case, the Court of Appeal did not indicate that the possibility of parole was part of its decision.

13. In *Ewing,* the Supreme Court confirmed that "Justice Kennedy's concurrence [in *Harmelin,* 501 U.S. at 1004–1005, 111 S.Ct. 2680] also stated that *Solem* 'did not mandate' comparative analysis 'within and between jurisdictions.' " *Ewing,* 538 U.S. at 23,

123 S.Ct. 1179. It is clear, following *Ewing,* that a court need not undertake an intrajurisdictional and interjurisdictional analysis if it does not find an inference of gross disproportionality. It is unclear, however, whether such an analysis must be undertaken in cases, such as this one, where the court has concluded that there is an inference of gross disproportionality.

(rape punishable by up to eight years); § 288 (sexual assault on a minor punishable by up to eight years). Regardless of the most aggravating circumstances, offenders convicted of separate offenses of rape and sexual assault on a minor could only be sentenced to a maximum total term of imprisonment of sixteen years. If voluntary manslaughter were substituted for either offense, the maximum total term of imprisonment is nineteen years, also regardless of the most aggravating circumstances.

Given that prisoners convicted of these and other serious and violent felonies would be eligible for parole, they would actually serve much shorter prison terms. See, e.g., Cal.Code Regs. tit. 15 §§ 2320 and 2329 (detailing California Board of Prison Terms' suggested base ranges of imprisonment for a wide variety of offenses). For example, the Board of Prison Terms regulations recommend that parole be made available after nineteen to twenty-one years for a prisoner convicted of second-degree murder involving the most aggravated circumstances, like "severe trauma inflicted with deadly intensity" such as "beating, clubbing, stabbing, strangulation" or "multiple wounds inflicted with a weapon" upon a victim that had "little or no personal relationship" with the prisoner or whose death occurred during a "robbery, rape, or other felony." Id. § 2403(c). Moreover, the nineteen to twenty-one year base term for such an offense may be reduced by postconviction credit of up to four months for each year served, i.e., a reduction of one year for every three years served. Id. § 2290. For second degree murder with the least aggravated circumstances of conviction, the suggested base term is fifteen to seventeen years, less credit for time served.

California's sentencing regulations recommend penalties for the most serious and violent crimes that are much lower than the sentence imposed upon Banyard. No reasonable person could conclude that the combination of Banyard's crime of drug possession and his criminal history, which reflects minor crimes for which he already has been punished, is *more* serious and, therefore, justifies a substantially longer sentence than for murder, manslaughter or rape. Banyard's sentence of at least twenty-five years to life in prison, with no possibility of reduction for postconviction credit or parole, is much harsher than those imposed in this jurisdiction for far more serious crimes.

### b. Interjurisdictional Analysis

An interjurisdictional analysis of Banyard's sentence indicates that it is excessive for the crimes he has committed and supports the Court's conclusion that it is grossly disproportionate. Although at least forty states and the federal government have enacted three strikes laws, it appears that only two states other than California—Washington and West Virginia—permit the third strike to be a felony that, alone, could not have constituted either of the first two strikes. Other states do not expose an offender to enhanced three strikes sentencing for a third strike that is passive or victimless. As far as shown by the Supreme Court analyses of the laws of other states, and by the Court's own limited research, the application of the enhanced three strike sentence to a person who committed Banyard's triggering offense would have been lawful under state law only in California.

Even the stringent United States Sentencing Guidelines (the "Guidelines") reserve a sentence as severe as Banyard's for recidivists who commit such heinous crimes as murder (Section 2A1.2); air piracy (§ 2A5.1); theft of more than $100 million (§ 2B1.1); robbery involving discharge of a weapon, serious bodily injury,

and approximately $1 million (§ 2B3.1); and drug offenses involving more than twenty pounds of heroin (§ 2D1.1). For recidivist drug offenses involving at least one pound of cocaine, the Guidelines reserve ten years of real prison time (with good time credits)(§ 2D1.1)—less than half of Banyard's twenty-five years to life sentence.[14]

If Banyard had been sentenced under the Guidelines for possession of between 500 mg and one gram of crack cocaine, even if he fell within the highest Criminal History Category of VI, he would have had to serve less than five years in prison.[15] If he had received downward adjustments to his base offense level for acceptance of responsibility, role in the offense, or other potentially applicable adjustments, his sentence would have been reduced even more.

### C. The Court of Appeal's Decision Involved An Unreasonable Application of Clearly Established Supreme Court Law to the Facts of Banyard's Case.

Although the Court of Appeal correctly identified the gross disproportionality principle, it unreasonably applied that principle to the unique facts of Banyard's case. Citing to *Rummel*, the Court of Appeal held that Banyard's case was not grossly disproportionate because "a state may punish recidivists more harshly than non-recidivists without offending concepts of cruel and unusual punishment." Unpublished Opinion at 5 (citations omitted). The Court of Appeal, however, in purporting to apply the gross disproportionality standard, failed to recognize the trivial

nature of Banyard's triggering offense, failed to understand that Banyard must serve a minimum term of twenty-five years in prison, without the possibility of a reduction for postconviction credit, before becoming eligible for parole, failed to ascertain the facts and circumstances of Banyard's prior convictions or even recognize the inconsistencies in the record before it, failed to compare the facts of this case to the facts of *Rummel* and *Solem* in order to determine where on the spectrum of gross disproportionality this case falls and, accordingly, failed to recognize that Banyard's sentence is even more grossly disproportionate than the one in *Solem* that the Supreme Court found to be unconstitutional.

While the range of permissible sentencing schemes is very broad and federal courts generally must defer to the state's sentencing authority, the state's sentencing power is not unlimited. *Andrade*, 538 U.S. at 75, 123 S.Ct. 1166 ("[T]he governing legal principle gives legislatures broad discretion to fashion a sentence *that fits within the scope of the proportionality principle*—the 'precise contours' of which 'are unclear.' ") (emphasis added) (citations omitted). The facts at issue here compel the Court to conclude that this is an "extraordinary case," *Andrade*, 538 U.S. at 77, 123 S.Ct. 1166, where the federal courts may limit the state's sentencing power in order to uphold the Eighth Amendment prohibition against grossly disproportionate sentences. It was objectively unreasonable for the California Court of Appeal to determine that the "contours" of the

---

**14.** Banyard also would not have been subject to the federal three strikes law, 18 U.S.C. § 3559(c), under which possession of less than a gram of cocaine base is not a triggering offense.

**15.** The base offense level for possessing between 500 mg and one gram of crack cocaine

is 16. An offense level of 16 and a Criminal History Category of VI yields a sentence of 46–57 months. After applying 15% good time credit, Banyard would have had to serve approximately 40 to 49 months in prison. *See United States Sentencing Guidelines* (1995).

gross disproportionality principle permitted affirmance of Banyard's sentence. *See Andrade*, 538 U.S. at 76, 123 S.Ct. 1166.

## II. Claim Two: There Was Insufficient Evidence That Banyard's Assault Conviction Was a "Serious Felony."

Banyard contends that there was insufficient evidence that his assault conviction was in fact a serious or violent felony, as defined by the Three Strikes Law, and that the state court made an unreasonable determination of fact when it concluded otherwise. Banyard specifically argues that his assault conviction did not qualify as a second strike because, contrary to the finding of the Court of Appeal, he was convicted of assault under California Penal Code § 245(a)(1), assault with a deadly weapon or with force likely to inflict great bodily injury, rather than § 245(a)(2), assault with a firearm, and that his conviction under § 245(a)(1) did not constitute a serious or violent felony for Three Strikes Law purposes.

### A. Banyard's Admission to the Two Prior Strikes

After Banyard had been convicted of his current offense, the trial court asked defense counsel if he wished to proceed with the prior conviction allegations. Defense counsel answered, "I believe my client will admit that, your Honor."

The prosecutor told Banyard:

There are two prior convictions for serious felony charges. One of them—it's alleged that one of them is a robbery from 1988 in case number A039125. And one of them is a—an assault with a firearm, a 245 subsection (a)(2), from 1992, case number 'T,' as in Tom, A 019674. Do you understand the allegation that you have these two prior serious felonies?

Petitioner answered, "Yes."

The prosecutor explained that Petitioner had a right to a jury trial on the prior conviction allegations, that he could present evidence and cross-examine witnesses, that he could subpoena witnesses to the stand, and that he had the right to testify on his own behalf. Petitioner said that he understood those rights and agreed to waive those rights.

The prosecutor then said, "So, Mr. Banyard, I'm asking whether or not it's—you admit or deny the truth of the allegations." The prosecutor then asked if Petitioner admitted that he had been convicted of a robbery in case number A039125 on April 21, 1988. Petitioner admitted he had been convicted of robbery in that case.

The prosecutor asked:

And do you admit or deny that, on November 3rd, 1992, you were convicted in the Superior Court of the State of California, County of Los Angeles, for the crime of assault with a deadly weapon, that being a firearm, in violation of Penal Code section 245, subsection (a)(2), in case number TA 019674?

Petitioner asked if "taking a plea bargain" was the same as being convicted. When the prosecutor answered, "yes," the Petitioner responded, "I admit." The prosecutor asked Petitioner if he had pled no contest in the assault case, and Petitioner agreed that he had pled no contest. Defense counsel concurred in the admissions, joined in the waivers, and stipulated to a factual basis. Neither the court, the prosecutor, nor defense counsel properly informed Banyard that "taking a plea bargain" to the § 245(a)(2) charge was not the same as being convicted of that charge. In fact, in admitting to "taking a plea bargain" to § 245(a)(2), Banyard actually admitted only to pleading that charge down to a lesser charge of § 245(a)(1).

The trial court accepted the "admission" of the prior convictions and the joinder of

the admission by defense counsel. The court found that Petitioner had suffered prior convictions for serious or violent felonies in case numbers A 039125 and TA 109674. The court, therefore, accepted Banyard's so-called "admission" that he had been convicted of § 245(a)(2) when he actually had been convicted of § 245(a)(1).

On direct appeal, Petitioner argued that there was insufficient evidence that his assault conviction constituted a strike under the Three Strikes Law. The Court of Appeal denied the claim. It noted that the consolidated information had alleged, pursuant to the Three Strikes Law, that Banyard had suffered prior convictions for serious or violent felonies, which included his assault conviction; the prosecutor had informed Banyard that the allegations were for convictions of serious felonies; and Banyard had admitted that he had been convicted of assault with a firearm. Unpublished Opinion at 9–10. Based on this record, the Court of Appeal concluded that "Banyard admitted he had been previously convicted of assault with a firearm within the meaning of Penal Code section 667, subdivisions (b) to (i), the Three Strikes law, and that this admission was sufficient to establish that allegation." Unpublished Opinion at 10.

**B. It Was Objectively Unreasonable for the Court of Appeal to Conclude That Banyard's Assault Conviction Was a Serious Felony Under the Three Strikes Law.**

The Court has determined that Banyard actually was convicted of assault under § 245(a)(1) and that such conviction did not constitute a serious felony for purposes of the Three Strikes Law. Based upon these facts and the record of the Three Strikes phase of Banyard's trial, it was objectively unreasonable for the Court of Appeal to have determined that Banyard had admitted to being convicted of § 245(a)(2). It was also objectively unreasonable for the Court of Appeal to have determined that this "admission" was sufficient to establish that the assault conviction constituted a valid strike. As set forth above, the Court of Appeal failed to recognize that Banyard was actually convicted of § 245(a)(1), not § 245(a)(2). An "admission" to something that is factually untrue does not make it true. It was objectively unreasonable for the Court of Appeal to rely completely and without inquiry on Banyard's "admission" that he had previously been convicted of § 245(a)(2) when, in fact, he had not been.

**III. Claims Three and Four: Ineffective Assistance of Counsel.**

Banyard asserts that he suffered from ineffective assistance of trial counsel and appellate counsel. In order to establish ineffective assistance of counsel, Banyard must prove that (1) the assistance provided by his counsel fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.[16] *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also Smith v. Robbins,* 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000) (*Strickland* standard applies to ineffective assistance of appellate counsel). As set forth below, Banyard's trial and appellate counsel were ineffective for the reasons he alleges and it is reasonably probable that the outcome of his trial or appeal would have been different but for their purported errors.

**16.** The *Strickland* standard is "clearly established" federal law for purposes of 28 U.S.C. § 2254(d)(1), as amended by AEDPA. *Ca-* *nales v. Roe,* 151 F.3d 1226, 1228 n. 2 (9th Cir.1998).

## A. Petitioner's Trial Counsel Was Ineffective.

Banyard claims his trial counsel committed three errors, and the outcome of his trial would have been different but for those errors, including: (a) trial counsel failed to investigate and establish at trial that his assault conviction was not a "serious felony"; (b) trial counsel advised Banyard to admit erroneously to a conviction under § 245(a)(2) when he had only been convicted under § 245(a)(1); and (c) trial counsel failed to call Banyard's co-defendant or offer the co-defendant's written confession, either of which would have exonerated Banyard.[17]

### 1. Banyard's Trial Counsel Was Ineffective For Failing to Show That His Assault Conviction Was Not a Serious Felony and for Advising Banyard to Admit to a Conviction Under Section 245(a)(2).

■ Banyard's first two claims of ineffective assistance of counsel depend upon his argument that he was convicted of assault under § 245(a)(1) rather than § 245(a)(2). As set forth more fully above, the Court has found that Banyard was convicted under § 245(a)(1) and that such conviction did not constitute a serious felony. It was deficient for Banyard's trial counsel to fail to investigate whether Banyard's prior felonies constituted strikes and to advise Banyard, without having conducted such an investigation, to admit to those prior strikes.

### 2. Banyard's Trial Counsel Was Not Ineffective For Failing to Call His Co–Defendant Harrison or Failing to Offer Harrison's Written Confession.

■ Banyard's claim that trial counsel was deficient for failing to call his co-defendant Harrison or offer Harrison's written confession is without merit. There is nothing in the record to suggest that, had Harrison been asked to testify, he would have done so. In fact, the record supports the opposite conclusion. Harrison declined to testify in his own defense and did not indicate that he would testify for Banyard. Counsel's performance does not fall below an objective standard of reasonableness for failure to call a witness who refuses to testify. *Drew v. Collins,* 964 F.2d 411, 422–23 (5th Cir.1992), *cert. denied,* 509 U.S. 925, 113 S.Ct. 3044, 125 L.Ed.2d 730 (1993); *Gomez v. McKaskle,* 734 F.2d 1107, 1110 (5th Cir.), *cert. denied,* 469 U.S. 1041, 105 S.Ct. 524, 83 L.Ed.2d 412 (1984).

■ Nor can petitioner satisfy the prejudice prong of *Strickland* based on Harrison's failure to testify. Other evidence was submitted to the jury indicating that Harrison told the police that Banyard was innocent. Banyard's trial counsel underscored this testimony in his closing argument. Because Harrison's testimony was cumulative of other evidence already before the jury, it is not reasonably probable that a different outcome would have been obtained had counsel called Harrison to testify. *See Carriger v. Lewis,* 971 F.2d 329, 332–34 (9th Cir.1992) (counsel's failure

---

**17.** Respondent argues that the ineffective assistance claims were procedurally defaulted before the state courts because he failed to raise them on direct appeal. Respondent's position is incorrect. The Superior Court denied the petition chiefly on its merits, but noted, without explanation, that the claims were "untimely," possibly because they should have been raised on direct appeal. *See In re Clark,* 5 Cal.4th 750, 780–81, 21 Cal.Rptr.2d 509, 855 P.2d 729 (1993). *Clark* specifically permits a "new" claim where it is alleged that counsel was ineffective for failing to raise it in the original petition. *Clark,* 5 Cal.4th at 781, 21 Cal.Rptr.2d 509, 855 P.2d 729.

to introduce cumulative evidence does not constitute ineffective assistance of counsel), *cert. denied,* 507 U.S. 992, 113 S.Ct. 1600, 123 L.Ed.2d 163 (1993).

The record also does not support Banyard's contention that his counsel did not "even attempt" to submit Harrison's written confession to the jury. Second Amended Petition at 7. In fact, Banyard's counsel forcefully argued to the trial court that it should allow Harrison's written statement to be admitted into evidence as a declaration against interest and as an admission by a co-defendant. The court declined to admit the letter because the handwritten note could not be considered trustworthy without Harrison's testimony, which he refused to provide. In these circumstances, Banyard's counsel's performance did not constitute ineffective assistance of counsel. Without Harrison's testimony to lay a foundation, any written confession could not have been admitted into evidence.

### B. Petitioner's Appellate Counsel Was Ineffective.

█ Lastly, Banyard argues that his appellate counsel was ineffective for failing to raise the issue of his trial counsel's ineffective assistance on direct appeal. Because the Court has found that Banyard's trial counsel was ineffective for having failed to investigate whether the assault conviction was a serious felony and advising Banyard to plead guilty to having two prior serious felonies, it was also ineffective for Banyard's appellate counsel to have failed to investigate these same issues and raise them on direct appeal.

### CONCLUSION

The Court finds that the Court of Appeal unreasonably applied clearly established federal law by holding that Banyard's sentence did not violate the Eighth Amendment. Banyard's sentence, when considered in light of his criminal history and applicable Supreme Court law, is grossly disproportionate to the offense he committed.

The Court also finds that there was insufficient evidence to show that Banyard's assault conviction constituted a valid strike and that Banyard suffered from ineffective assistance of trial and appellate counsel. The Court of Appeal's decision to the contrary constituted an unreasonable application of clearly established federal law.

### ORDER

Based on all the foregoing, IT IS HEREBY ORDERED that Petitioner Michael Banyard's petition for writ of habeas corpus be GRANTED.

IT IS FURTHER ORDERED that Petitioner's sentenced be VACATED and his case be REMANDED to state court for re-sentencing within thirty days of this order, in a manner consistent with the views expressed herein.

IT IS SO ORDERED.