428 F.Supp.2d 1064 (2006)
Troy ALLEN, aka Troy Bernard Allen, Petitioner,
v.
George STRATTON, Warden, CSP-SAC., Respondent.[1]
No. CV 04-7524-GPS(RC).
United States District Court, C.D. California.
March 6, 2006.
*1065 *1066 Troy Allen, Represa, CA, Pro se.
Yun K. Lee, Deputy Attorney General, Office of Attorney General of the State of California, Los Angeles, CA, for Respondent.

ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
SCHIAVELLI, District Judge.
Pursuant to 28 U.S.C. Section 636, the Court has reviewed the Petition and other papers along with the attached Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, as well as petitioner's objections, and has made a de novo determination.
IT IS ORDERED that (1) the Report and Recommendation is approved and adopted; (2) the Report and Recommendation is adopted as the findings of fact and conclusions of law herein; and (3) Judgment *1067 shall be entered denying the petition for writ of habeas corpus and dismissing the action with prejudice.
IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recommendation and Judgment by the United States mail on the parties.

REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE
CHAPMAN, United States Magistrate Judge.
This Report and Recommendation is submitted to the Honorable George P. Schiavelli, United States District Judge, by Magistrate Judge Rosalyn M. Chapman, pursuant to the provisions of 28 U.S.C. § 636 and General Order 01-13 of the United States District Court for the Central District of California.

BACKGROUND

I
On July 3, 2000, in Los Angeles County Superior Court case no. PA035272, a jury convicted petitioner Troy Allen, aka Troy Bernard Allen, of two counts of pimping in violation of California Penal Code ("P.C.") § 266h(a), and in a bifurcated proceeding, the trial court found petitioner had suffered four prior convictions for "serious" or "violent" felonies within the meaning of P.C. §§ 667(b)-(i) and 1170.12(a)-(d) and four prior convictions for which he served a term of imprisonment but did not remain free of custody for five years thereafter within the meaning of P.C. § 667.5(b). Clerk's Transcript ("CT") 258-59, 281-82; Reporter's Transcript ("RT") 553:3-555:12, 577:27-579:3.[2] Petitioner was sentenced under the Three Strikes law to the total term of 54 years to life in state prison. CT 284-86; RT 591:4-592:8.
Petitioner appealed his convictions and sentence to the California Court of Appeal, which affirmed the judgment in an unpublished opinion filed October 4, 2001. Motion to Dismiss ("Motion"), Exh. C. Petitioner then filed a petition for review in the California Supreme Court, which denied review on December 12, 2001. Motion, Exhs. D-E.
On January 15, 2003,[3] petitioner filed a habeas corpus petition in the Los Angeles County Superior Court, which was denied on January 30, 2003. Motion, Exhs. F-G; Notice of Lodgment (December 15, 2004), Lodgment No. 1. On February 6, 2003, petitioner filed a habeas corpus petition in the California Court of Appeal, which was denied on June 11, 2003. Motion, Exhs. H-I. Finally, on September 22, 2003, petitioner filed a habeas corpus petition in the California Supreme Court, which, as amended, was denied on June 30, 2004. Motion, Exhs. J-L.

II
In affirming the trial court's judgment, the California Court of Appeal made the *1068 following findings of fact regarding the circumstances underlying petitioner's convictions:[4] Police Officers Trevin Grant and Pedro Barba stopped petitioner for a traffic violation while he was driving a pickup truck. This was in the City of San Fernando, on January 13, 2000. The officers spoke with petitioner for a few minutes, ascertained that he was from Sacramento, searched the vehicle with his consent, and released him without a citation.
Ten minutes later, the same officers stopped Tyona Dodson and Shannan Bryant on a part of San Fernando Road frequented by prostitutes and known as "the track." The officers stopped Dodson and Bryant on suspicion of prostitution, at the request of an undercover officer. Officer Grant questioned the women, learned that they were from Sacramento, and suspected that they might have a connection with petitioner. When Officer Grant mentioned petitioner's name to the women, Bryant admitted knowing him. Dodson and Bryant were taken to the police station and questioned further but were not arrested.
Petitioner's account of these stops differed in several respects. He testified that Officer Grant made the connection between him and the women only because Officer Grant had seen a photograph of Bryant when he searched the truck, which was owned by Bryant. He also testified that the search was without consent.
Police learned from Dodson and Bryant that each worked for petitioner as a prostitute for' the first time during a trip to Las Vegas in November 1999, which was arranged and paid for by petitioner. During that trip, both gave part of their prostitution income to petitioner. Petitioner instructed them how much to charge for various sex acts and how to determine if clients were police.
Dodson and Bryant worked as prostitutes for petitioner during three other trips to Los Angeles, two in December 1999 and one in January 2000. On each occasion they gave part of their prostitution income to petitioner. During both December trips, petitioner stayed with them in a motel and paid for the room. In the course of all three trips, the women paid petitioner more of their prostitution income than he returned to them in money and goods. Dodson and Bryant also prostituted for petitioner in San Francisco and possibly San Diego.
Petitioner was arrested January 14, 2000, the day after the traffic stop. Petitioner denied having anything more than an "inclination" that Dodson and Bryant were prostitutes, and denied explaining to them any of the rules of prostitution, including how to determine if clients were police. He denied ever taking any money from Dodson. He admitted that he took $400 from Bryant during their Las Vegas trip, but said he did so to hold it for her at her request.

III
On August 31, 2004, petitioner filed the pending habeas corpus petition under 28 U.S.C. § 2254, challenging his convictions and sentence. On December 3, 2004, respondent filed a motion to dismiss, arguing the petition is untimely under the one year statute of limitations established by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d). Petitioner failed to file a timely opposition to the motion to dismiss, and a Report and Recommendation was filed finding the petition was untimely and recommending its dismissal on that ground. *1069 While the period for objections to the Report and Recommendation was pending, petitioner filed a tardy opposition to the motion to dismiss, arguing the statute of limitations should be equitably tolled for the period he was in administrative segregation and did not have access to his legal materials. After respondent replied to petitioner's opposition, the Court determined petitioner is entitled to equitable tolling and found the pending petition to be timely. Accordingly, the Court withdrew the initial Report and Recommendation, denied the motion to dismiss, and ordered respondent to address the merits of petitioner's claims for relief. On June 8, 2005, respondent filed his answer, and on August 12, 2005, petitioner filed his reply or traverse.
In the habeas corpus petition, petitioner raises the following claims for relief:
Ground OneP.C. § 266h(a) is facially overbroad (Petition at 5);
Ground TwoThe arrest of petitioner's wife shortly prior to the time she was scheduled to testify as a defense witness violated petitioner's rights to compulsory process and to present a defense (Id.);
Ground ThreePetitioner's sentence constitutes cruel and unusual punishment under the Eighth Amendment and violates the double jeopardy clause (Petition at 6);
Ground FourPetitioner's conviction under P.C. § 266h(a) violates petitioner's equal protection rights because it imposes more severe punishment than other similar prostitution statutes (Petition at 7);
Ground FivePetitioner's conviction under P.C. § 266h(a) violates petitioner's rights to due process and notice because the operative information did not accurately reflect the charges against him (Petition at 8-9);
Ground SixPetitioner's trial counsel was constitutionally ineffective for failing to move for a judgment of acquittal based upon the difference between the charging information and the proof at trial (Petition at 9-10);
Ground SevenPetitioner's trial counsel was constitutionally ineffective for failing to request a jury instruction on the necessity of viewing accomplice testimony with distrust (Petition at 10-12);
Ground EightPetitioner's trial counsel was constitutionally ineffective for failing to request jury instructions on a lesser-included offense under P.C. § 653.23(a)(2) (Petition at 12-13);
Ground NinePetitioner's trial counsel was constitutionally ineffective for failing to object to the arrest of petitioner's wife shortly before she was scheduled to testify as a defense witness (Petition at 13);
Ground TenPetitioner's trial counsel was constitutionally ineffective for failing to object to petitioner's sentence on Eighth Amendment and double jeopardy grounds (Petition at 13-14);
Ground ElevenPetitioner's trial counsel was constitutionally ineffective for failing to object to petitioner's convictions on due process and notice grounds, as set forth in Ground Five (Petition at 14);
Ground TwelvePetitioner's rights to due process and a fair trial were violated by the cumulative prejudicial effect of the errors set forth in Grounds One through Eleven (Petition at 14);
Ground ThirteenThe evidence presented at trial was insufficient to support petitioner's convictions (Petition at 14a);[5] and
*1070 Ground FourteenPetitioner's trial counsel was constitutionally ineffective for failing to challenge the admissibility of several statements made by Dodson and Bryant to the police (Petition at 14a-14d).

DISCUSSION

IV
Petitioner's claims must be considered in light of AEDPA, which "circumscribes a federal habeas court's review of a state court decision." Lockyer v. Andrade, 538 U.S. 63, 70, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003); Wiggins v. Smith, 539 U.S. 510, 520, 123 S.Ct. 2527, 2534, 156 L.Ed.2d 471 (2003). As amended by AEPA, 28 U.S.C. § 2254(d) provides:
An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim[¶] (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or [¶] (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
28 U.S.C. § 2254(d). Further, under AEDPA, a federal court shall presume a state court's determination of factual issues is correct, and petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).
The California Supreme Court denied petitioner's claims on the merits when it denied his petitions for review and habeas corpus without comment. Gaston v. Palmer, 417 F.3d 1030, 1038 (9th Cir. 2005); Hunter v. Aispuro, 982 F.2d 344, 348 (9th Cir.1992), cert. denied, 510 U.S. 887, 114 S.Ct. 240, 126 L.Ed.2d 194 (1993). However, federal courts presume "[w[here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." Ylst v. Nunnemaker, 501 U.S. 797, 801, 111 S.Ct. 2590, 2593, 115 L.Ed.2d 706 (1991); Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000), cert. denied, 534 U.S. 944, 122 S.Ct. 324, 151 L.Ed.2d 242 (2001). Thus, in addressing Ground Three, this Court will consider the reasoned opinion of the California Court of Appeal denying that claim. Brodit v. Cambra, 350 F.3d 985, 987 (9th Cir.2003), cert. denied, 542 U.S. 925, 124 S.Ct. 2888, 159 L.Ed.2d 787 (2004). As to the other claims, however, since they have never been the subject of a reasoned state court opinion, this Court must conduct "an independent review of the record" to determine whether the California Supreme Court's ultimate decision to deny those claims was contrary to, or involved an unreasonable application of, clearly established federal law. Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir.2002), cert. denied, 539 U.S. 916, 123 S.Ct. 2286, 156 L.Ed.2d 132 (2003); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir.2000).

V
The California statute under which petitioner was convicted of pimping, P.C. § 266h(a), provides:
any person who, knowing another person is a prostitute, lives or derives support or maintenance in whole or in part from the earnings or proceeds of the person's prostitution, or from money loaned or advanced to or charged against that person by any keeper or manager or inmate of a house or other place where prostitution is practiced or allowed . . . is guilty of pimping, a felony *1071 P.C. § 266h(a). In Ground One, petitioner claims Section 266h(a) is unconstitutionally overbroad on its face.[6] Specifically, petitioner contends P.C. § 266h(a) is overbroad because it defines a pimp to be any individual who derives any financial benefit, no matter how slight, from a person they know to be a prostitute, and such individuals include children, psychologists, and the like. Petition at 5. In Ground Four, petitioner claims Section 266h(a) violates the equal protection clause because it authorizes greater punishment than other criminal statutes covering prostitution-related activities. Specifically, petitioner contends he was denied equal protection of the law because pimping is a felony under Section 266h(a), whereas other crimes related to prostitution, such as keeping a house of ill-fame (P.C. § 315), keeping a disorderly house (P.C. § 316), and prevailing upon another to visit a place of prostitution (P.C. § 318), are misdemeanors.
A. Ground One:
Generally, "constitutional rights are personal and may not be asserted vicariously." Broadrick v. Oklahoma, 413 U.S. 601, 610, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973); Wurtz v. Risley, 719 F.2d 1438, 1440 (9th Cir.1983). This means "a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court." Broadrick, 413 U.S. at 610, 93 S.Ct. at 2915; Houston v. Roe, 177 F.3d 901, 907 (9th Cir.1999), cert. denied, 528 U.S. 1159, 120 S.Ct. 1168, 145 L.Ed.2d 1078 (2000). Nevertheless, under the overbreadth doctrine, an individual may mount a facial attack on a statute that restricts protected speech, even if the individual's own speech is unprotected. Broadrick, 413 U.S. at 612, 93 S.Ct. at 2916; Turney v. Pugh, 400 F.3d 1197, 1200 (9th Cir.2005).
To invalidate a statute on its face, the overbreadth of the statute must be "`substantial,' not only in an absolute sense, but also relative to the scope of the law's plainly legitimate applications. . . ." Virginia v. Hicks, 539 U.S. 113, 119-20, 123 S.Ct. 2191, 2197, 156 L.Ed.2d 148 (2003); City of Houston v. Hill, 482 U.S. 451, 458, 107 S.Ct. 2502, 2508, 96 L.Ed.2d 398 (1987). A statute may not be held facially invalid "`merely because it is possible to conceive of a single impermissible application . . ." Hill, 482 U.S. at 458, 107 S.Ct. at 2508 (citation omitted); Turney, 400 F.3d at 1200.
To determine whether Section 266h(a) is unconstitutionally overbroad, this Court's "first task" is to consider "whether the enactment reaches a substantial amount of constitutionally protected conduct." Hill, 482 U.S. at 458-59, 107 S.Ct. at 2508 (citations omitted); Turney, 400 F.3d at 1200-01. "If it does not, then the overbreadth challenge must fail." Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982); Hotel & Motel Ass'n of Oakland v. City of Oakland, 344 F.3d 959, 971 (9th Cir.2003), cert. denied, 542 U.S. 904, 124 S.Ct. 2839, 159 L.Ed.2d 268 (2004). "Criminal statutes must be scrutinized with particular care," and "those that make unlawful a substantial amount of constitutionally protected *1072 conduct may be held facially invalid even if they also have legitimate application." Hill, 482 U.S. at 459, 107 S.Ct. at 2508 (citations omitted). However, "[r]arely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." Hicks, 539 U.S. at 124, 123 S.Ct. at 2199; see also Broadrick, 413 U.S. at 615, 93 S.Ct. at 2917-18 ("[F]acial overbreadth adjudication is, an exception to our traditional rules of practice and . . . its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from `pure speech' toward conduct. . . ."). Petitioner "bears the burden of demonstrating, `from the text of [the statute] and from actual fact,' that substantial overbreadth exists." Hicks, 539 U.S. at 122, 123 S.Ct. at 2198; Gospel Missions of Am. v. City of Los Angeles, 419 F.3d 1042, 1050 (9th Cir. 2005).
Penal Code Section 266h is "designed `to discourage prostitution by discouraging persons other than the prostitute from augmenting and expanding a prostitute's operation or increasing the available supply of prostitutes.'" People v. Gibson, 90 Cal.App.4th 371, 387, 108 Cal.Rptr.2d 809 (2001) (citations omitted); People v. McNulty, 202 Cal.App.3d 624, 632, 249 Cal.Rptr. 22 (1988). In this regard, Section 266h(a) regulates conduct, i.e., supporting maintaining oneself from the proceeds of another's prostitution, not speech or conduct necessarily associated with speech, cf. Williams v. Superior Court, 30 Cal.App.3d 8, 11, 106 Cal.Rptr. 89 (1973) (Prostitution "does not involve First Amendment Hor any other constitutionally protected rights."), and petitioner has not met his burden of demonstrating substantial overbreadth exists. Hicks, 539 U.S. at 123-24, 123 S.Ct. at 2199; New York v. Ferber, 458 U.S. 747, 773-74, 102 S.Ct. 3348, 3363, 73 L.Ed.2d 1113 (1982).[7]
B. Ground Four:
The Fourteenth Amendment's equal protection clause "is essentially a direction that all persons similarly situated should be treated alike." Cleburne v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); Caswell v. Calderon, 363 F.3d 832, 837 (9th Cir.2004). Thus, equal protection does not require that things that are different in fact be treated the same in law. Rostker v. Goldberg, 453 U.S. 57, 79, 101 S.Ct. 2646, 2659, 69 L.Ed.2d 478 (1981); Michael M. v. Superior Court, 450 U.S. 464, 469, 101 S.Ct. 1200, 1204, 67 L.Ed.2d 437 (1981). Rather, to raise an equal protection violation, a litigant must allege he was similarly situated to others who received preferential treatment, Cleburne, 473 U.S. at 439, 105 S.Ct. at 3254; Fraley v. Bureau of Prisons, 1 F.3d 924, 926 (9th Cir.1993), and there was discriminatory motive or intent. McLean v. Crabtree, 173 *1073 F.3d 1176, 1185 (9th Cir.1999), cert. denied, 528 U.S. 1086, 120 S.Ct. 814, 145 L.Ed.2d 685 (2000); Thomas v. Borg, 159 F.3d 1147, 1150 (9th Cir.1998), cert. denied, 526 U.S. 1055, 119 S.Ct. 1365, 143 L.Ed.2d 526 (1999).
"For statutory challenges made on Equal Protection grounds, the general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate governmental interest." Robinson v. Marshall, 66 F.3d 249, 251 (9th Cir.1995) (per curiam) (citation and internal quotation marks omitted); McGinnis v. Royster, 410 U.S. 263, 270, 93 S.Ct. 1055, 1059, 35 L.Ed.2d 282 (1973); Kalka v. Vasquez, 867 F.2d 546, 547 (9th Cir.1989).
Here, California has determined that the crime of pimping requires a more serious penalty than the related crime of prostitution, People v. Smith, 44 Cal.2d 77, 80, 279 P.2d 33 (1955); Williams, 30 Cal. App.3d at 14, 106 Cal.Rptr. 89; see also People v. Pangelina, 117 Cal.App.3d 414, 422, 172 Cal.Rptr. 661 (1981) (California courts "have recognized an affirmative legislative intent to punish prostitutes less severely than those arrested for pimping. . . ."), since "prostitutes are criminally exploited by [pimps]." Pangelina, 117 Cal.App.3d at 422, 172 Cal.Rptr. 661. Thus, Section 266h(a) "`discourag[es] persons other than the prostitute from augmenting and expanding a prostitute's operation or increasing the available supply of prostitutes[,]' Gibson, 90 Cal.App.4th at 387, 108 Cal.Rptr.2d 809 (citations omitted); McNulty, 202 Cal.App.3d at 632, 249 Cal.Rptr. 22, and punishes more severely those who corrupt others. People v. Jeffers, 188 Cal.App.3d 840, 856, 233 Cal.Rptr. 692 (1987); People v. Jaimez, 184 Cal. App.3d 146, 150, 228 Cal.Rptr. 852 (1986).
Since there is a legitimate governmental purpose related to punishing pimping as a felony, petitioner has not met his burden of showing an equal protection violation. Robinson, 66 F.3d at 251; United States v. Harding, 971 F.2d 410, 412-14 (9th Cir. 1992), cert. denied, 506 U.S. 1070, 113 S.Ct. 1025, 122 L.Ed.2d 170 (1993); see also Heller v. Doe, 509 U.S. 312, 320-21, 113 S.Ct. 2637, 2643, 125 L.Ed.2d 257 (1993) ("A statute is presumed constitutional, and `[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it,' whether or not the basis has a foundation in the record." (citations omitted)).
For these reasons, the California Supreme Court's denials of Grounds One and Four was neither contrary to, nor an unreasonable application of, clearly established federal law within the meaning of 28 U.S.C. § 2254(d).

VI
"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment . . . or in the Compulsory Process or Confrontation clauses of the Sixth Amendment . . ., the Constitution guarantees criminal defendants `a meaningful opportunity to present a complete defense.'" Crane v. Kentucky, 476 U.S. 683, 690, 106 S.Ct. 2142, 2146, 90 L.Ed.2d 636 (1986)(quoting California v. Trombetta, 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984)). At a minimum, the compulsory process clause guarantees criminal defendants "the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt." Pennsylvania v. Ritchie, 480 U.S. 39, 56, 107 S.Ct. 989, 1000, 94 L.Ed.2d 40 (1987); see also Washington v. Texas, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967) ("The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to *1074 present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies.").
In Ground Two, petitioner claims his rights to compulsory process and to present a defense were violated by the arrest of his wife Karyn Allen ("Karyn")[8] shortly before she was to testify as a defense witness. In a sworn declaration, Karyn states that on June 28, 2000, she and two other individuals, Rashana Paxton and Tommy Hillard, went to the courthouse where petitioner's trial was taking place, and met Bryant and Dodson. At some point, Karyn said to Paxton, who was talking with Bryant and Dodson, that "they need to tell the truth, because my husband is facing spending 25 years to life in prison. Their lies are taking my husband away from his family." Soon after, Karyn and Paxton were arrested for intimidating a witness, and Karyn was taken to the Los Angeles County jail. From jail, Karyn called petitioner's defense counsel to say she still wanted to testify on petitioner's behalf, but counsel never contacted Karyn while she was in jail. Petition, Exh. A at 17.
Here, there does not appear to be any factual basis to petitioner's claim that defense counsel intended to call Karyn as a witness.[9] Indeed, when the trial court asked defense counsel who she intended to call as witnesses, counsel stated she would be calling Paxton and Hillard. RT 288. After Paxton and Hillard testified, defense counsel stated her next witness would be petitioner, if he decided to testify, and that she had no more witnesses. RT 326.
Thus, the California Supreme Court's denial of Ground Two was neither contrary to, nor an unreasonable application of, clearly established federal law within the meaning of 28 U.S.C. § 2254(d).

VII
The Sixth Amendment "guarantees a criminal defendant a fundamental right to be clearly informed of the nature and cause of the charges against him." Calderon v. Prunty, 59 F.3d 1005, 1009 (9th Cir.1995).[10] The essential purpose of the *1075 Sixth Amendment's notice provision is to allow a defendant "to know the charges against which he must defend in order to have a reasonable opportunity to prepare and present a defense and not be taken by surprise at trial." Usher v. Gomez, 775 F.Supp. 1308, 1313 (N.D.Cal.1991), aff'd, 974 F.2d 1344 (1992), cert. denied, 506 U.S. 1064, 113 S.Ct. 1007, 122 L.Ed.2d 156 (1993); see also Cole v. Arkansas, 333 U.S. 196, 201, 68 S.Ct. 514, 517, 92 L.Ed. 644 (1948) ("No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal.").
As set forth in Part V above, Section 266h(a), the statute under which petitioner was convicted, uses the disjunctive "or"; whereas, in the information charging petitioner, the disjunctive "or" was replaced by the conjunctive "and" in counts 1 and 4. Thus, the charging information read:
[T]he crime of PIMPING, in violation of PENAL CODE SECTION 266h(a), a Felony, was committed by TROY BENARD ALLEN, who did unlawfully, and knowing . . . Dodson [Bryant] to be a prostitute, live and derive support and maintenance in whole and in part from the earnings and proceeds of said person's prostitution and from money loaned and advanced to and charged against said prostitute by a keeper, manager, and inmate of a house and other place where prostitution was practiced and allowed.
CT 101-02 (emphases added).
In Ground Five, petitioner claims the variance between the statutory language of Section 226h(a) and that of the charging information violated his constitutional right to notice. Petitioner also claims the language in the charging information violated his rights to due process and a fair trial because the verdict forms for the pimping charges provided that the jury found him guilty of the crimes "as charged in . . . the Information." CT 258-59. There is no merit to these claims.
To determine whether a criminal defendant has received constitutionally adequate notice, "the court looks first to the information." Calderon, 59 F.3d at 1009; James v. Borg, 24 F.3d 20, 24 (9th Cir.), cert. denied, 513 U.S. 935, 115 S.Ct. 333, 130 L.Ed.2d 291 (1994). "The principal purpose of the information is to provide the defendant with a description of the charges against him in sufficient detail to enable him to prepare his defense." James, 24 F.3d at 24-25. Here, the charging information clearly informed petitioner he was being charged in counts 1 and 4 with pimping in violation of P.C. § 266h(a), regardless of whether the disjunctive "or" or the conjunctive "and" was used. Petitioner was not misled regarding the nature of the charges against him. Nor is there a scintilla of evidence to suggest petitioner could not prepare an adequate defense against the pimping charges, and the transcript of petitioner's trial shows petitioner did not prepare a defense and belies petitioner's claims that his constitutional right to notice was violated.
Further, although the charging information may not have been word-for-word the language of Section 266h(a), RT 53-56, the jury instruction CALJIC no. 10.70 accurately set forth the language of Section 266h(a):
Every person who, knowing another person is a prostitute, lives or derives support or maintenance in whole or in part from the earnings or proceeds of that other person's prostitution, or from money loaned or advanced to or charged against that other person by any keeper or manager or inmate of a house or other place where prostitution is practiced *1076 or allowed is guilty of the crime of pimping in violation of Penal Code section 266h, subdivision (a). [¶]
"Prostitution" is engaging in sexual intercourse or any lewd act between persons for money or other consideration. [¶]
In order to prove this crime, each of the following elements must be proved: [¶] 1. The defendant know that another person was a prostitute, and [¶] 2. That defendant lived or derived support or maintenance in whole or in part from the earnings or proceeds of the other person's prostitution, or from money loaned or advanced to or charged against that other person by any keeper or manager or inmate of a house or other place where prostitution is practiced or allowed.
CT 240 (emphases added). In light of this instruction, which the jury is presumed to have followed in reaching its verdicts, see, e.g., Weeks v. Angelone, 528 U.S. 225, 234, 120 S.Ct. 727, 733, 145 L.Ed.2d 727 (2000); Zafiro v. United States, 506 U.S. 534, 540-41, 113 S.Ct. 933, 939, 122 L.Ed.2d 317 (1993), it is clear that any error in the wording of the charging information was patently harmless. Brecht v. Abrahamson, 507 U.S. 619, 622, 113 S.Ct. 1710, 1714, 123 L.Ed.2d 353 (1993).
Based on the foregoing, the California Supreme Court's denial of Ground Five was neither contrary to, nor an unreasonable application of, clearly established federal law within the meaning of 28 U.S.C. § 2254(d).

VIII
California's Three Strikes law "consists of two virtually identical statutory schemes designed to increase the prison terms of repeat felons." Ewing v. California, 538 U.S. 11, 15, 123 S.Ct. 1179, 1182, 155 L.Ed.2d 108 (2003) (internal quotations omitted). Under the Three Strikes law, "[i]f the defendant has two or more prior `serious' or `violent' felony convictions, he must receive an indeterminate term of life imprisonment." Id. at 15-16, 123 S.Ct. at 1182-83 (internal citations and quotations omitted). While the prior "strike" convictions must be for "serious" or "violent" felonies, "any felony can constitute the third strike, and thus can subject a defendant to a term of 25 years to life in prison." Andrade, 538 U.S. at 67, 123 S.Ct. at 1170.
Here, petitioner was sentenced as a third "striker" based on his four prior convictions for serious or violent felonies. CT 281-82; RT 577-78. As a result of petitioner's prior "strike" convictions, the sentence on each of petitioner's current felony convictions was enhanced to 25 years to life under the Three Strikes law. P.C. §§ 667(c), (e), 1170.12(a), (c). In Ground Three, petitioner raises several constitutional challenges to his enhanced sentence.
First, petitioner claims his sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment because it is "grossly disproportionate" to the severity of his current pimping offenses. The California Court of Appeal denied this claim, holding:
Recidivism statutes such as [P.C.] sections 667 and 1170.12 have been held not to inflict cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. [¶] A punishment violates the prohibition in article I, section 17 of California's Constitution against cruel and unusual punishment if it "`shocks the conscience and offends fundamental notions of human dignity,'" considering the "nature of the offense and the offender," and comparing the punishment to that for more serious crimes in the same jurisdiction and to that for the same offense in other jurisdictions. Because the Three *1077 Strikes law punishes recidivism, punishment under it should be compared to other punishments for recidivism. [¶] Considering [petitioner's] history of recidivism recounted by the court,[11] the serious and violent nature of his earlier offenses, "the specific penalties imposed under [P.C.] section 667, subdivision (e)(2)(A) and section 1170.12, subdivision (c)(2)(A), and the existence of recidivist statutes in many states, [petitioner']s sentence neither shocks the conscience nor offends fundamental notions of human dignity.
Motion, Exh. C at 23-24 (citations omitted; footnote added).
Although "[a] gross disproportionality principle is applicable to sentences for terms of years[,]" Andrade, 538 U.S. at 72, 123 S.Ct. at 1173, "[t]he gross disproportionality principle reserves a constitutional violation for only the extraordinary case." Id. at 77, 123 S.Ct. at 1175; see also Rummel v. Estelle, 445 U.S. 263, 272, 100 S.Ct. 1133, 1138, 63 L.Ed.2d 382 (1980) ("Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare."). Here, petitioner's case is not extraordinary. While the third strike offenses in Andrade and Ewing were both wobblers (crimes that can be punished as either misdemeanors or felonies), see P.C. §§ 489(b) (grand theft), 666 (petty theft with a prior conviction), pimping is always a felony under P.C. § 266h(a). Since the first factor in determining whether a sentence is grossly disproportionate under the Eighth Amendment is a comparison of "the gravity of the offense and the harshness of the penalty," Solem v. Helm, 463 U.S. 277, 292, 103 S.Ct. 3001, 3011, 77 L.Ed.2d 637 (1983), petitioner's offenses are felonies, and while his current sentence is undeniably harsh, it does not violate the Eighth Amendment's narrow proportionality principle. Rios v. Garcia, 390 F.3d 1082, 1086 (9th Cir.2004), cert. denied, ___ U.S. ___, 126 S.Ct. 37, 163 L.Ed.2d 74 (2005).[12]
Petitioner also claims the enhancement of his current sentence under the Three Strikes law based upon his prior "strike" convictions violates double jeopardy principles, as he is effectively being punished twice for those convictions,[13] *1078 The double jeopardy clause protects against successive prosecutions for the same offense after an acquittal or conviction, and against multiple punishments for the same offense. Monge, 524 U.S. at 727-28, 118 S.Ct. at 2250; Witte v. United States, 515 U.S. 389, 397, 115 S.Ct. 2199, 2204, 132 L.Ed.2d 351 (1995).
However, the use of prior convictions to enhance a later sentence under a recidivism statute, such as the Three Strikes law, does not offend double jeopardy principles because "the enhanced punishment imposed for the later offense `is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes,' but instead as `a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.'" Witte, 515 U.S. at 400, 115 S.Ct. at 2206 (quoting Gryger v. Burke, 334 U.S. 728, 732, 68 S.Ct. 1256, 1258, 92 L.Ed. 1683 (1948)); see also Moore v. Missouri, 159 U.S. 673, 677, 16 S.Ct. 179, 181, 40 L.Ed. 301 (1895)(under recidivist statute, "the accused is not again punished for the first offence" because "the punishment is for the last offence committed, and it is rendered more severe in consequence of the situation into which the party had previously brought himself').
In sum, the California Supreme Court's denial of Ground Three was neither contrary to, nor an unreasonable application of, clearly established federal law within the meaning of 28 U.S.C. § 2254(d).

IX
To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate both that defense counsel's performance was deficient and that the deficient performance prejudiced the defense. Williams v. Taylor, 529 U.S. 362, 390, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000); Roe v. Flores-Ortega, 528 U.S. 470, 476-77, 120 S.Ct. 1029, 1034, 145 L.Ed.2d 985 (2000); Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The petitioner bears the burden of establishing both components. Williams, 529 U.S. at 390-91, 120 S.Ct. at 1511-12; Smith v. Robbins, 528 U.S. 259, 285-86, 120 S.Ct. 746, 764, 145 L.Ed.2d 756 (2000); Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. "Deficient performance is performance which is objectively unreasonable under prevailing professional norms." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir.1990) (citing Strickland, 466 U.S. at 688, 104 S.Ct. at 2064). Prejudice "focuses on the question whether counsel's deficient performance renders the results of the trial unreliable or the proceeding fundamentally unfair." Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993); Williams, 529 U.S. at 393 n. 17, 120 S.Ct. at 1513 n. 17.
To establish deficient performance, the petitioner must show his counsel "made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687, 104 S.Ct. at 2064; Karis v. Calderon, 283 F.3d 1117, 1130 (9th Cir.2002), cert. denied, 539 U.S. 958, 123 S.Ct. 2637, 156 L.Ed.2d 655 (2003). In reviewing trial counsel's performance, the court will "strongly presume[ ] [that counsel] rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690, 104 S.Ct. at 2066; Kimmelman v. Morrison, 477 U.S. 365, 381, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986). Only if defense counsel's acts or omissions, examined within the context of all the surrounding circumstances, were outside the "wide *1079 range" of professionally competent assistance, will the petitioner meet this initial burden. Kimmelman, 477 U.S. at 386, 106 S.Ct. at 2588; Strickland, 466 U.S. at 690, 104 S.Ct. at 2068.
If the petitioner makes this showing, he must then establish that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 693, 104 S.Ct. at 2067; Williams, 529 U.S. at 391, 120 S.Ct. at 1511-12. The errors must not merely undermine confidence in the outcome of the trial, but must result in a proceeding that was fundamentally unfair. Williams, 529 U.S. at 393 n. 17, 120 S.Ct. at 1513 n. 17; Lockhart, 506 U.S. at 369, 113 S.Ct. at 842-43. However, a court need not determine whether defense counsel's performance was deficient before examining the prejudice suffered by the defendant as the result of the alleged deficiencies. See Strickland, 466 U.S. at 697, 104 S.Ct. at 2069 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."); Smith, 528 U.S. at 286 n. 14, 120 S.Ct. at 764 n. 14 (same).
In Grounds Six through Eleven and Ground Fourteen, petitioner raises a host of ineffective assistance of counsel claims. As the following discussion will illustrate, these claims are uniformly without merit.
Grounds Six & Eleven:
In Grounds Six and Eleven, petitioner claims defense counsel was ineffective for failing to move for a judgment of acquittal on the pimping charges based upon the variance between the language in the statutory provision, Section 266h(a), and the charging information. As this Court has held, since the variance in the language did not implicate petitioner's constitutional right to notice, any error in the charging information was corrected by the jury instruction, CALJIC no. 10.70, and, thus, was harmless under Brecht. Accordingly, petitioner has not shown either deficient performance by defense counsel, James, 24 F.3d at 27, or that he was prejudiced by counsel's failure to move for acquittal on language variance grounds, which certainly would have been denied. Kyles v. Whitley, 514 U.S. 419, 436, 115 S.Ct. 1555, 1567, 131 L.Ed.2d 490 (1995); Pirtle, 313 F.3d at 1173.
Ground Seven:
In Ground Seven, petitioner claims defense counsel was ineffective for failing to request the trial court instruct the jury with CALJIC no. 3.18, regarding viewing accomplice testimony with distrust:
To the extent that an accomplice gives testimony that tends to incriminate the defendant, it should be viewed with caution. This does not mean, however, that you may arbitrarily disregard that testimony. You should give that testimony the weight you think it deserves after examining it with care and caution and in the light of all the evidence in the case.
CALJIC no. 3.18 (West 6th ed., 1999 revision). According to petitioner, this instruction was necessary because "Shannon [Bryant] was an accomplice to the `pimping' of Tyona [Dodson] and vice-versa." Petition at 11.
Under California law, "the prostitute whose earnings are taken is not an accomplice." People v. Langlois, 220 Cal. App.2d 831, 833, 34 Cal.Rptr. 116 (1963); Pangelina, 117 Cal.App.3d at 422, 172 Cal. Rptr. 661. Thus, Tyona Dodson could not legally be petitioner's accomplice as to count 1 and Shannan Bryant could not legally be petitioner's accomplice as to count 4. Nevertheless, petitioner relies on People v. Berger, 185 Cal.App.2d 16, 19-20, 7 Cal.Rptr. 827 (1960), to support his claim that Dodson was an accomplice to Bryant's count (count 4) and vice-versa. In Berger, two women, who worked together as prostitutes *1080 at an apartment in Hollywood, arranged with the defendant to accept "customers" the defendant referred to them from a nearby hotel he owned. Id. at 17-18, 7 Cal.Rptr. 827. The women kept a single ledger and split the proceeds with the defendant. Id. at 18, 7 Cal.Rptr. 827. Under these circumstances, the court concluded each woman was an accomplice to the pimping count relating to the other woman, and the defendant was convicted of two counts of pimping. Id. This situation, however, is different than in our case. Here, the California Court of Appeal's factual findings do not show that either Dodson or Bryant participated in, or profited from, the exploitation of the other. Thus, Berger is simply inapposite,[14] and defense counsel was not ineffective for failing to request a jury instruction the trial court would undoubtedly have denied. Clabourne v. Lewis, 64 F.3d 1373, 1383 (9th Cir.1995); see also Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir.) (counsel is not obligated to raise frivolous motions, and failure to do so cannot constitute ineffective assistance of counsel), cert. denied, 513 U.S. 1001, 115 S.Ct. 513, 130 L.Ed.2d 420 (1994).
Moreover, regarding Bryant and Dodson's testimony, the jury was instructed on how to assess a witness' credibility, including the effect of inconsistent statements, discrepancies in testimonies, the existence of motive or bias, and the weight to be given the testimony of a witness who is "willfully false in one material part." CT 230-37; RT 526:11-530:16. Further, in closing argument, defense counsel repeatedly attacked Dodson's and Bryant's testimony as not credible. See, e.g., RT 487:11-499:25. Therefore, petitioner also cannot demonstrate prejudice from defense counsel's failure to request a jury instruction on accomplice testimony. See United States v. Bosch, 914 F.2d 1239, 1247-48 (9th Cir.1990) (petitioner was not prejudiced by failure to request accomplice testimony instruction when court gave general credibility instructions and counsel attacked purported accomplice's testimony during closing argument); United States v. Martin, 489 F.2d 674, 677-78 (9th Cir. 1973) (same), cert. denied, 417 U.S. 948, 94 S.Ct. 3073, 41 L.Ed.2d 668 (1974).
Ground Eight:
In Ground Eight, petitioner claims defense counsel was ineffective for failing to request a jury instruction on the allegedly lesser included misdemeanor offense of aiding a prostitute under P.C. § 653.23(a)(2).[15] Unfortunately for petitioner, under California law, there is no authority for the proposition that P.C. § 653.23(a)(2) is a lesser included offense of pimping, P.C. § 266h(a), and it is quite likely that the trial court would not have found it to be so.[16] Accordingly, defense *1081 counsel's failure to make such a request, which would have been futile, was not deficient performance. James, 24 F.3d at 27.
Ground Nine:
In Ground Nine, petitioner claims defense counsel was ineffective for failing to object to the arrest of Karyn on the grounds her arrest violated petitioner's rights to compulsory process and to present a defense. However, as discussed above, there is no factual basis for this claim since defense counsel never intended to call Karyn as, a witness. See Lord v. Wood, 184 F.3d 1083, 1095 (9th Cir.1999) ("Few decisions a lawyer makes draw so heavily on professional judgment as whether or not to proffer a witness at trial."), cert. denied, 528 U.S. 1198, 120 S.Ct. 1262, 146 L.Ed.2d 118 (2000); Brown v. Terhune, 158 F.Supp.2d 1050, 1065 (N.D.Cal.2001) ("as long as counsel's decision is reasonable, the decision whether to present a particular defense or to call a particular witness at trial generally falls within the realm of tactical choices to which courts should defer"), affirmed by, 59 Fed.Appx. 190 (9th Cir.2003). Thus, petitioner cannot show he suffered any prejudice as a result of defense counsel's failure to, object to Karyn's absence. Kyles, 514 U.S. at 436, 115 S.Ct. at 1567; Pirtle, 313 F.3d at 1173 n. 8.
Ground Ten:
In Ground Ten, petitioner claims defense counsel was ineffective for failing to object to petitioner's enhanced sentence under the Three Strikes law on Eighth Amendment and double jeopardy grounds. However, as discussed above, petitioner's sentence does not violate the proscription against cruel and unusual punishment or the double jeopardy clause; thus, any objection on those grounds would have been futile, and counsel's failure to make futile objections is not ineffective performance. James, 24 F.3d at 27.
Ground Fourteen:
"In general, [petitioner] does not have standing to challenge a violation of another's rights; however, illegally obtained confessions may be less reliable than voluntary ones, and thus using a coerced confession at another's trial can violate due process." Douglas v. Woodford, 316 F.3d 1079, 1092 (9th Cir.), cert. denied, 540 U.S. 810, 124 S.Ct. 49, 157 L.Ed.2d 23 (2003); Williams v. Woodford, 384 F.3d 567, 593 (9th Cir.2004), cert. denied, ___ U.S. ___, 126 S.Ct. 419, 163 L.Ed.2d 319 (2005). However, habeas relief is warranted only "if the trial court's admission of [such] testimony rendered the trial so fundamentally unfair as to violate due process." Williams, 384 F.3d at 593.
In Ground Fourteen, petitioner claims trial counsel was ineffective for failing to make a motion to suppress the statements Dodson and Bryant made to the police following their arrests.
As an initial matter, there is no factual basis for this claim since defense counsel did file a motion to suppress under P.C. § 1538.5, seeking to suppress "[a]ny and all evidence including, but not limited to, statements, observations, and all related information regarding victims Tyona Dodson and Shannon Bryant and subsequent information received from same victims." CT 128-34.[17]
Moreover, petitioner has made no showing that the statements by Dodson and Bryant were coerced, see, e.g., RT 162:6-24, 240:16-23, or that either Dodson's or Bryant's trial testimony was involuntary. Douglas, 316 F.3d at 1092-93; United States v. Mattison, 437 F.2d 84, 85 (9th Cir.1970) (per curiam). Therefore, petitioner *1082 has not shown deficient performance by defense counsel. Lowry, 21 F.3d at 346. Rather, defense counsel made a reasonable strategic decision to use portions of Dodson's and Bryant's police interviews to discredit their testimony. See RT 148:19-156:10, 159:16-162:9, 199:25-200:21, 205:4-206:10, 208:15-211:12, 212:1-213:7, 216:24-217:3.
Therefore, the California Supreme Court's denial of these ineffective assistance of counsel claims was neither contrary to, nor an unreasonable application of, clearly established federal law within the meaning of 28 U.S.C. § 2254(d).

X
"The cumulative error doctrine in habeas recognizes that, even if no single error were prejudicial, where there are several substantial errors, their cumulative effect may nevertheless be so prejudicial as to require reversal." Parle v. Runnels, 387 F.3d 1030, 1045 (9th Cir.2004) (internal quotation marks omitted), cert. denied, 544 U.S. 1041, 125 S.Ct. 2274, 161 L.Ed.2d 1073 (2005). In Ground Twelve, petitioner claims the numerous errors in Grounds One through Eleven of the petition had a cumulative prejudicial effect. Petition at 14. However, because this Court has found no merit to any of petitioner's claims, petitioner has not shown his petition should be reversed for cumulative error. Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir.2002); Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir.1996), cert. denied, 519 U.S. 1142, 117 S.Ct. 1017, 136 L.Ed.2d 894 (1997).
Therefore, the California Supreme Court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law within the meaning of 28 U.S.C. § 2254(d).

RECOMMENDATION
IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) adopting the Report and Recommendation as the findings of fact and conclusions of law herein; and (3) directing that Judgment be entered denying the petition and dismissing the action with prejudice.
November 7, 2005.
NOTES
[1] George Stratton is substituted for Michael Knowles as respondent under Fed.R.Civ.P. 25(d).
[2] In addition to the pimping counts, petitioner was also charged with six counts of pandering in violation of P.C. § 266i(a); however, the jury was unable to reach unanimous verdicts on those counts. CT 100-03, 261; RT 559:26-560:10. Although the jury deadlocked 9-3 in favor of conviction, the prosecution chose not to retry petitioner on the pandering counts. RT 560:7-562:6.
[3] "Under the `prison mailbox rule' . . . a prisoner's . . . habeas petition is deemed filed when he hands it over to prison authorities for mailing in the district court." Huizar v. Carey, 273 F.3d 1220, 1222 (9th Cir.2001) (citation omitted); Houston v. Lack, 487 U.S. 266, 276, 108 S.Ct. 2379, 2385, 101 L.Ed.2d 245 (1988). The "[mailbox] rule applies to prisoners filing habeas petitions in both federal and state courts." Huizar, 273 F.3d at 1223; Anthony v. Cambra, 236 F.3d 568, 574-75 (9th Cir.2000), cert. denied, 533 U.S. 941, 121 S.Ct. 2576, 150 L.Ed.2d 739 (2001).
[4] Motion, Exh. C at 11-12.
[5] In his reply, petitioner concedes that Ground Thirteen is without merit. See Reply at 68. The Court, thus, deems Ground Thirteen to have been waived and will not address it.
[6] Petitioner's reply or traverse raises various other attacks on P.C. § 266h(a) not raised in the petition, such as vagueness, cruel and unusual punishment, and infringement on the prostitutes' right of intimate association. However, the Court will not consider these claims since "[a] Traverse is not the proper pleading to raise additional grounds for relief." Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir.1994), cert. denied, 514 U.S. 1026, 115 S.Ct. 1378, 131 L.Ed.2d 232 (1995).
[7] Moreover, a natural reading of Section 266h does not support its application to a child who derives his support from his mother's ,prostitution, see P.C. § 4 (Penal Code "provisions are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice."); People v. Flores, 51 Cal.App.4th 1199, 1204, 59 Cal.Rptr.2d 637 (1996) ("We must give penal statutes a reasonable and common sense construction."), or to an individual, such as a psychologist, for example, who provides a legitimate professional service to a prostitute. In such circumstances, even if paid with proceeds earned from prostitution, the psychologist derives his support from his own performance of services, and not directly from the prostitute's earnings. Cf. People v. Reitzke, 21 Cal.App. 740, 742, 132 P. 1063 (1913) (legitimate defense to pimping is that the prostitute's "money was not given for the defendant's support, but was advanced to him to enable him to engage in some legitimate business. . . . ").
[8] The Court refers to petitioner's wife by her first name to distinguish her from petitioner.
[9] Additionally, as set forth in a second sworn declaration, Karyn's proposed testimony consisted primarily of hearsay statements and, even if admissible, was largely cumulative of Bryant's testimony on cross-examination, see RT 236-38, and Dodson's testimony at petitioner's preliminary hearing. RT 140-42. Specifically, Karyn states she would have testified, as follows:

[O]n January 13th, 2000, at around 8:00 p.m. a[sic] received a phone call from Shannon Bryant and Tyona Dodson, telling me that they were being detained at Van Nuys jail. I asked Shannon what was going on. Shannon told me that Tyona and her and [sic] been picked up. I asked her what for? Shannon told me for intent to committee [sic] prostitution. Shannon said me to [sic] that the police would release Tyona and her if they would cooperate by saying that Troy Allen was their pimp. Shannon said that the police told her and Tyona that if they did not cooperate that they would be charged with prostitution and Tyona would be violated and could serve several months in jail for violation of her probation. Shannon said that she was not going to say that to the police because it was not true[,] that Troy was not her pimp. I spoke very briefly she was crying and scared. Tyona said they did do nothing [sic] and that she did not want to go to jail. Shannon said that she would call me as soon as they were released.
Petition, Exh. A at 18.
[10] The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation. . . ." U.S. Const., Amend. VI. This guarantee is made applicable to the states through the due process clause of the Fourteenth Amendment. In re Oliver, 333 U.S. 257, 273-74, 68 S.Ct. 499, 507-08, 92 L.Ed. 682 (1948); Gray v. Raines, 662 F.2d 569, 571 (9th Cir.1981).
[11] The California Court of Appeal set forth petitioner's prior criminal history as follows:

[Petitioner] was convicted of robbery and burglary in 1982, robbery in 1983, transporting a controlled substance in 1988, possession of drugs in prison in 1989, and possession of cocaine base in 1991. Between the 1982 and 1991 convictions, [petitioner] spent only about two years out of prison. The 1991 conviction carried a sentence of 10 years in prison, but the trial court apparently did not know when [petitioner] had been paroled. [¶] Though [petitioner] is correct that his convictions for previous felonies were "long in the past," he spent much of the time between those convictions and his arrest for the present crimes in prison or jail.
Motion, Exh. C at 23.
[12] In his reply or traverse, petitioner cites Ramirez v. Castro, 365 F.3d 755 (9th Cir. 2004), and Banyard v. Duncan, 342 F.Supp.2d 865 (C.D.Cal.2004), to support his argument that, even after the issuance of Andrade and Ewing, his sentence under the Three Strikes law constitutes cruel and unusual punishment. Reply at 31-38. However, as discussed above, the circumstances of petitioner's convictions are distinguishable from those in Ramirez and Banyard. First, pimping is always a felony under California law. Second, pimping involves exploiting a victimthe prostitute. Third, petitioner had four, rather than two, prior "strikes." Finally, in addition to the "strikes," petitioner's prior criminal history includes multiple other convictions as set forth by the California courts.
[13] The Fifth Amendment's double jeopardy clause provides that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb. . . ." U.S. Const., Amend. V. This protection is made applicable to the states through the Fourteenth Amendment. Monge v. California, 524 U.S. 721, 727, 118 S.Ct. 2246, 2250, 141 L.Ed.2d 615 (1998).
[14] In fact, the Berger court specifically noted that, as in our case:

[i]t does not follow . . . that either [woman] was an accomplice to the crime charged in the counts of the information in which she was named as the female person from whose earnings as a prostitute [defendant] derived support and maintenance, and for whom [defendant] solicited. To the contrary, it has been uniformly held in this state that the woman who is exploited by a [pimp] in violation of section 266h is not an accomplice of the [pimp] who exploits her. 185 Cal.App.2d at 19-20.
[15] P.C. § 653.23 prohibits:

any person to . . . [c]ollect or receive all or part of the proceeds earned from an act or acts of prostitution committed by another person in violation of subdivision (b) of [P.C.] Section 647.
P.C. § 653.23(a)(2).
[16] An unpublished California Court of Appeal opinion explicitly holds P.C. § 653.23(a)(2) "is not a lesser included offense of [P.C.] section 266h, subdivision (a). . . ." People v. Futrell, 7 Cal.Rptr.3d 256, 261 (2003). In reaching this conclusion, the California appellate court undertook an extensive analysis. See id. at 261-65.
[17] In denying the motion, the trial court noted petitioner had "no standing [to the challenge] the stop of the girls [Dodson and Bryant]." CT 205-06; RT C-4:20-C-45:9.